Howard E. BUNCH, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 80–3510.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 8, 1982.

Decided July 7, 1982.

Eugene M. Moen, Chemnick & Moen, Seattle, Wash., for plaintiff-appellant.

Sally R. Gustafson, Asst. U. S. Atty., Seattle, Wash., for defendant-appellee.

Before ANDERSON and ALARCON, Circuit Judges, and CRAIG *, District Judge.

* Hon. Walter E. Craig, Senior United States District Judge for the District of Arizona, sitting by designation.

ALARCON, Circuit Judge:

Bunch appeals from the judgment of the district court in an age discrimination action and from the denial of his motion to strike testimony, or alternatively for a new trial or for relief from judgment. We must decide whether the district court erred in denying Bunch's motion; and, if so, whether the record shows prejudice. We find no error and no prejudice. We affirm the judgment and ruling of the district court.

## I. FACTUAL BACKGROUND

### A. *Selection Process*

In 1973, there was an opening at McChord Air Force Base in Washington for a position as an Air Force Reserve Technician (ART) Flight Instructor (Fixed Wing). Two candidates were considered for the position, Bunch and Charles Casson. Their records were reviewed and each was interviewed. After this preliminary process, Bunch was recommended as the primary nominee and Casson was selected as the alternate nominee. In keeping with the ART selection procedures, these recommendations were submitted to the Headquarters Air Force Reserve (AFRES) at Warner Robbins Air Force Base in Georgia.

At AFRES, the military records, including Officer Evaluation Reports (OER's), and the educational backgrounds of both candidates were reviewed by the Operations Division and by the Civilian Personnel Division. The Operations Division concurred in the McChord Selection of Bunch. The Civilian Personnel Division, however, concluded that Casson was the superior candidate. This determination was made by Lee Lingelbach, Director of Civilian Personnel, and Pierce Duane Turner, his assistant. AFRES accepted the Civilian Personnel Division's recommendation of Casson over

Bunch. Bunch was notified of this decision by letter in April, 1973. The letter, drafted by Turner and signed by Lingelbach stated:

1. The attached nomination of Mr. Howard E. Bunch has been thoroughly reviewed by appropriate members of the Headquarters AFRES staff and his qualifications and retainability compared with those of your alternate nomination, Mr. Charles B. Casson.

2. Mr. Bunch's application reflects that he meets the qualification requirements for the position of Flight Instructor (Fixed Wing), GS–2181–13, however, there are other factors which must be considered in the selection process. Selection of the most highly qualified individuals to occupy key officer level positions is paramount to the effective operation of Air Force Reserve units. Merit factors which must influence the selection of a nominee must not only include current qualifications in the unit aircraft but also age of the individual, education level, overall retainability in the ART Program,[1] as well as the overall flying time and the experience background of the individual. Applicants considered should be thoroughly evaluated toward locating a person with the necessary "whole man" qualifications to meet mission requirements. Mr. Bunch is approaching 45 years of age, has not completed requirements for a college degree and he would become status quo in approximately eight years. He would not be eligible for Civil Service retirement at the time he must retire from the Air Force Reserve.

3. Since Mr. Bunch does not meet the "whole man" qualification criteria for entry of the AFRES Program, your alternate, Mr. Charles B. Casson has been considered. Mr. Casson is, for all practi-

---

1. An ART Flight Instructor (Fixed Wing) is a civilian position. RT at 69. A person must, however, be a member of the Air Force Reserve. The time that an individual may remain in the Air Force Reserve is based upon his rank. For instance lieutenent colonels and below can only stay in the Air Force Reserve for 28 years before they are compelled to retire. The amount of time a person thus remains eligible for an ART position is referred to as retainability. *See id.* at 71–72. Upon retirement from the Air Force Reserve and ART Flight Instructor would continue to have a right to employment until eligible for Civil Service Retirement. During the interim between retirement from the Air Force Reserve and eligibility for Civil Service Retirement different work must be found for the Flight Instructor.

cal purposes, as equally qualified as Mr. Bunch. He is 35 years of age, has a college degree and will not become status quo until 1987.

Plaintiff's Exhibit 8.

On April 12, 1974, Bunch filed suit in the district court alleging a violation of the Age Discrimination in Employment Act, 29 U.S.C. § 633(a) [ADEA]. Bunch contended that failure to select him for the position was on the basis of age and retainability which constituted age discrimination in violation of ADEA. *See* Brief for Appellant at 23. The suit was dismissed by the district court for lack of jurisdiction. On appeal we reversed concluding that jurisdiction existed since the suit was pending at the time the statute became effective. *Bunch v. United States*, 548 F.2d 336, 340 (9th Cir. 1977).

### B. *The Deposition Testimony*

The depositions of Lingelbach and Turner were taken in October, 1978, by telephone. It is this deposition testimony that gives rise to Bunch's claims on appeal before this court.

### 1. The Lingelbach Deposition

At the time Lingelbach was deposed, he had not recently reviewed all the documentation involved in the selection of Casson over Bunch. Lingelbach Deposition at 6. While he had a general recall of the selection, over five years had elapsed since the selection had been made. *See id.* at 5–6. During the deposition, Lingelbach gave the following responses to questions from Bunch's counsel:

Q In this particular case, as I understand it from Mr. Turner, the feeling was that both the applicants were well qualified or very well qualified in terms of their flying backgrounds and experience and so on; is that correct, to your recollection?

A To my recollection, their flying time and so forth was comparable, yes.

Q And their qualifications in the unit air craft?

A Yes.

Q So what we're left with is—there are three things that are listed: their age, education, and retainability. Is that an accurate statement: those are the three factors that distinguished the two candidates?

A Those would be three but there are others. I'm sure that in looking at all the factors involved, we decided the most important; certainly those three would be key factors.

Q There may have been some others that weren't as important as those three?

A Yes.

*Id.* at 11–12.

Q You indicated that your primary concern was with this whole-man concept. Isn't that really just another way of saying you want to get the best person you can for the job, taking into account all the factors that influence a person's performance?

A I think that's a succinct summary of the definition of that word. In other words, we're looking at the whole-man, and we are interested in getting the best qualified person, and when you think of this in terms of the fact that our defense posture depends very heavily on the reverse side of it, this is probably even more critical than would might appear.

Q And you also said, I think, that in this particular case that you were applying the whole-man concept, and there were no single factor(s) that was the primary factor in determining that Casson would be hired instead of Bunch, rather the big picture, I believe.

A Yes. There was no prejudice that relates to anyone of these factors that relates to either one of the individuals. We look at the total thing as we would do on an awful lot of these in the course of the year, and based upon personnel and technical judgments, decide which man fits best.

Q So, you're saying, I guess, that really education by itself would not have been a determining factor necessarily, and retainability by itself might not have, and

age by itself might not have been, but taking all of these factors together, plus what other ones were mentioned in the letter, taking them all together as the determining factor; is that correct?

A   That's right, taking all the factors and, of course, realizing that each one of those is a very general term that is very broad. . . .

*Id.* at 27–29.

Lingelbach also testified that Casson was chosen for the ART position because he was better qualified on an overall basis:

Q   In this particular case, other than the letter of April 13, 1973, was there any one single factor that made Captain Casson more desirable to the ART program than Major Bunch, in AFRES' view?

A   Looking at it in terms of what I have before me and my recollection, which, as you said, because of time is so far back, it was just the judgment of the staff activities involved in the determination that from an overall standpoint, using, again, the total man-concept which incorporates a big picture: today, as well as tomorrow, in terms of potential that the Captain [Casson] was better qualified. There was no single factor that singled it out.

*Id.* at 26.

2.   The Turner Deposition

Turner had reviewed material concerning the Casson selection over Bunch shortly before he gave his telephonic deposition. Turner Deposition at 5–6.   Turner was asked to explain the letter sent to Bunch informing him that he had not been selected:

Q   All right.   Now, in that memorandum or letter, there's a mention made of the reasons why Mr. Casson was selected, and it talks about the "whole man" qualification criteria.

A   Yeah.   You have to state it again.

Q   Okay.   In that memorandum or letter, reasons are given why Mr. Casson was selected instead of Mr. Bunch, and it talks about the "whole-man" qualifications criteria.

A   Mm-hmm.

Q   And then it lists a number of factors that are called merit factors.   Nothing is mentioned in there about the OER's, and I wonder if you can explain why it isn't mentioned, if you know?

A   Well, I don't know except normally, you know, it was not mentioned.   We never did mention; still don't today. Never have as far as I know mentioned the type of records that are reviewed in reaching a conclusion like that because it was based on not just OER's.   It was based on several different things, and a lot of those—is that 13 April?

Q   That's correct.

A   Yeah.   I have that here.

Q   Fine.

A   There's a lot of things that are listed there that, of course, weren't considered, you know.   We looked at the total Military Personal Records which also contains the pictures.   We had verbal conversations that took place and there were numerous runs [sic] of those.

Q   You're going to have to slow down a little bit, too.   Sorry.   I will keep reminding you.

(Discussion off the record.)

Q   (By Mr. Moen [Appellant's attorney]) You have that in front of you?   Let me ask you a couple questions about that if I may since that is a fairly important letter.

A   Okay.

Q   Why would you not indicate the other factors that were taken into account? Would they be less important than the ones that are listed?

A   Not necessarily.   It's kind of a difficult question to answer.

Q   But in any event, as a normal matter, you would list some of the factors in your decision and not other factors?

A   It's hard to know what these were because there's a lot of mental processes that went through that period of time as they are still today on selecting anybody. I think what we did here was kind of wrapped everything into one—

Q  Mm-hmm.

A  —because we had said in our regulations, there are certain records that are reviewed at Headquarters that are not available to the local field units, and the letter—I notice that we mentioned in paragraph two the application—

Q  Yes.

A  —and there we consider the application to be not only the standard 171 which is the thing the guy filled out, but also his copy of flying time, his Military Personal record, voucher from previous supervisors, that kind of thing.

Q  Mm-hmm.

A  So we just kind of use the word "application" for an all inclusive thing, and it was in the selection process.

Id. at 26–29.

Turner testified that the retainability of both candidates was an "important consideration" in the decision, id. at 44, and that age was considered in relationship to retainability. Id. at 48. Turner also stated that he was aware Casson's OER's were higher than Bunch's OER's. Id. at 47. Turner could not, however, identify any one factor that was more important than any of the others in the selection of Casson. Id. at 44.

Neither Turner nor Lingelbach was asked what weight was given to any specific factor.

### C.  The Trial

The government's theory of defense was that Bunch's age was not the determining factor in the decision to select Casson for the ART position. Prior to trial, the pretrial order included the government's contention that:

The various considerations taken into account by AFRES such as the educational progression of the two men, the relative service records and OER's of Casson and Bunch, who had the greater amount of retainability for the ART Program, and who appeared to fit the "whole man" concept were valid factors which did not amount to age discrimination.

Brief for Appellee at 10. The pretrial order also stated that "on the overall, Casson had superior OER's than did plaintiff." Id.

In the government's opening statement, counsel clearly set forth its theory that age was not the determining factor in the selection of Casson over Bunch:

Now two men applied for and were considered for the flight instructor position at McChord in 1973, one is the plaintiff, Howard Bunch, and the other was Captain Charles Casson. The two officials who had primary responsibility for selecting Captain Casson over the plaintiff will testify today, your Honor. They are Lee Lingelbach who is the civilian personnel officer at Headquarters Air Force Reserve, and Mr. Duane Turner who was Mr. Lingelbach's assistant, with responsibility for filling ART officer positions. Messers Lingelbach and Turner will testify that both applicants for the job in question, Casson and Bunch, had reasonably good qualifications for the civilian requirements of the job. On the military side however, they will testify that Captain Casson had significantly better officer evaluation reports, which they will call OER's, for officer evaluation reports. Captain Casson had almost seven more years of retainability in the ART program before a statute, 10 USC, Chapter 863, requires him to retire, and that statute requires military people to retire after twenty-eight years of service from their commission date.

\*     \*     \*     \*     \*     \*

Now plaintiff of course has the burden, your Honor, of proving that age was the determining factor in Bunch's nonselection. This plaintiff will be unable to prove, because the fact is that Casson was selected for a variety of reasons, the most important factor was his superior military record. This was of overriding importance to the military, from the military aspect of the job. As I said, it is a hybrid job, and the military considerations were really of paramount importance in this instance, because they both fulfilled most of the civilian requirements.

Mr. Lingelbach and Mr. Turner will testify that Captain Casson had superior military record, which means his officer evaluation reports were significantly better than Mr. Bunch's. And Mr. Lingelbach will also testify, your Honor, that Casson's superior military record constituted approximately fifty percent of the weight of his decision. He will testify that fifty percent of his decision was based upon the military record, approximately twenty-five percent on the differential in education, educational record, and approximately twenty-five percent in other factors, including retainability.

RT at 8–11.

At the close of Bunch's case, the government moved for entry of judgment on the ground that Bunch had failed to prove a claim for relief. RT at 56. The trial judge denied the motion and the government went forward with its case. RT at 65. Lingelbach testified that in selecting Casson over Bunch, the primary consideration was the quality of experience: "Well about fifty percent of our decision is based on what the quality of the man's experience is, how well he has performed for everybody else up to this point." RT at 103. This factor is demonstrated by the OER's. RT at 103–04. Twenty-five percent of the decision was based on educational background, amount and kind. *Id.* at 104. The remaining twenty-five percent was a catchall category that became significant when comparing two individuals only if they were equal in the first two categories. *See id.* at 104–05. Lingelbach testified that Casson's OER's were significantly higher than Bunch's OER's. *See id.* at 109–10. Moreover, Bunch's military record indicated that he had been passed over (not promoted) twice during his active military duty. *Id.* at 112. Bunch's educational experience was in chemistry and economics and he had not achieved a bachelor of science degree. This was compared with Casson's educational experience which had resulted in a bachelor of science degree in aeronautical administration. Lingelbach indicated as important the fact that Bunch's experience was not in a field related to aeronautics whereas Cas-

son's was. Finally, Lingelbach testified that retainability was really not significant in the choice of Casson over Bunch because of the other factors: "Casson obviously had the best record, he obviously had the greatest growth potential, and he had the longest period to grow in." RT at 123.

On cross-examination, Lingelbach maintained his position that age and retainability were not the reasons for Bunch's failure to be selected:

Q Now to make sure that I understand your testimony so far, you have said that age and retainability were not the reasons for selecting Casson over Bunch?
A I have said that other factors were paramount to the extent in distinguishing the difference between the experience of this individual to where while those things were looked at, they were not relevant to this nonselection.

\*  \*  \*  \*  \*  \*

Q Casson had the greater retainability.
A Yes. I also said that as relates to Bunch, it was also a point in his favor that his combined experience and what he would be as an ART, had he been the best qualified individual.
Q But those considerations didn't even become considerations until basically you had already decided that Casson was the superior candidate—when I say those, I am referring to age and retainability?
A That's right.

RT at 151–52.

On cross-examination, counsel for Bunch asked Lingelbach about portions of his deposition testimony:

Q Directing your attention specifically to Line 18, [page 11] which begins a series of questions and answers, I am going to ask you if you were asked these questions and you gave these answers, and when I am through you can just answer whether that is correct or not. Were you asked this question:

"Q So what we are left with is there are three things that are listed, their age, education, and retainability, is that an accurate statement, those are

the three factors that distinguish the two candidates?

"A Those would be three others. I am sure that in looking at factors involved we decided the most important certainly those three would be key factors. Were you asked that question, and did you give that answer?"

A According to this record, yes

MR. BARNES [Counsel for the government]: Your Honor, if I may, I believe the witness made a couple corrections in the transcript shortly after the deposition was taken. On Line 23 it should read "Those would be three, but there are others," rather than "Those would be three others". You have to bear in mind, your Honor, that the deposition was taken over the telephone, and the reporter had a hard time getting it all down. And then following that it should be "all factors" instead of at factors, so it should read "... in looking at all factors involved..."

Q Then if I could direct your attention to Page 28 of the deposition, beginning at Line 19, and I will ask you again were you asked the question, and whether you gave the answer:

"Q So you are saying I guess that really education by itself would not have been a determining factor necessarily, and retainability by itself might not have, and age but [sic] itself might not have been, but taking all of these factors together, plus what other ones were mentioned in the letter, taking them all together as a determining factor, is that correct?

"A That's right, taking all as facts, and of course realizing that each one of these is a very general term and very broad. Education, for example, means a whole lot of things.

"Q Other than simply college degree?

"A That's right."

MR. BARNES: Your Honor, then there is a correction on Line 1 of Page 29, it should read, "That's right, taking all the factors," instead of "All as facts."

Q were those questions asked of you, and were those your answers?

A Yes.

RT at 139–41.

At the completion of Lingelbach's testimony the government renewed its motion for entry of judgment. RT at 158. Bunch advised the court, however, that he had rebuttal evidence and the judge allowed Bunch to proceed. *Id.*

Bunch called Turner to the stand and asked him if he had heard Lingelbach's testimony:

Q Did you hear most of that [Lingelbach's] testimony?

A Yes.

Q And you heard Mr. Lingelbach testify as to the selection process that occurred at AFRES with regard to Mr. Casson and Mr. Bunch?

A Yes.

Q I will ask you first a very general question, does the testimony that Mr. Lingelbach gave as to the selection process and the factors that were taken into account comport with your recollection and your understanding of what happened at that time?

A Yes.

Q I will follow it up with some specific questions, if I may. Mr. Lingelbach I believe testified in effect that retainability and age, even though they were listed in the letter notifying McChord Air Force Base of the nonselection of Mr. Bunch, were not in fact factors that went into deciding to hire Mr. Casson over Mr. Bunch, that the decision was based almost entirely on experience, quality of experience, based on review of the OER's, is that your understanding, Mr. Turner?

A Yes.

Q Was it your understanding back on October 3, 1978, when your deposition was taken, sir?

A Yes, basically yes.

RT at 160–61.

Turner indicated, as had Lingelbach, that the OER's were very important in Casson's selection:

Q All right, beyond [ascertaining the bare eligibility requirements of both candidates] . . . you reviewed the OER's, the OER's of Mr. Casson were significantly better than that of Mr. Bunch, so much so that would you agree with Mr. Lingelbach's statement that the only way you could select Bunch would be if politics played a part?

A That is correct.

Q You believe it was that significant.

A There was a significant difference in the OER's, yes, sir.

RT at 173–74.

Counsel for Bunch went on to ask Turner about his memory now as compared to at the time of his deposition:

Q And your memory now is particularly better now than it was in 1978, and it has been two years since that deposition was taken, almost two years, in 1978, and let me ask you one particular question if I may; if in October of 1978 you said you couldn't remember anything particularly different about either of the two applicants based upon your review of the records, including the OER's, would that have been a true statement in 1978?

A It perhaps will, and especially if you remember the conditions under which I was asked those questions, it was on the telephone, it was almost spur of the moment, I had not been given time to review all of this good stuff, and you know, now I have, now I have the files back in front, now I have taken another look, so I guess my memory is fresher now. [T]hat probably wasn't true in '78, but you hadn't had a chance to review the material well in '78?

A No, sir. I did not have as I explained to you all then, the military personnel records, it had been five years since I had even seen them, and I did not have them at that time, and I answered your questions to the best of my ability, based purely sitting there in the office on a telephone that we had to be constantly interrupted in, we all had to change offices because there were jackhammers going on outside, and that kind of thing,

and to the best of my knowledge I answered your questions just as truthfully as I knew how at that time, based on information I had in front of me at that time.

Q And at that time your memory was that there wasn't anything particularly different about the two people?

A At that time, five years later—

Q You didn't remember the fact that their OER's were significantly different at the time of your deposition?

A Apparently not, if I said that.

RT at 174–75. Turner was then questioned about specific portions of his deposition testimony:

Q (By Mr. Moen [counsel for Bunch]) Can I call your attention to Page 44 of your deposition at that time, Mr. Turner, and particularly to Line 21, and let me just read that question and have you tell me whether that was what you testified to at that time, and if it is now changed. The question was asked; In the process that was made, the selection process, was there any one factor that made, in your mind, would have been more important in selecting Mr. Casson over Mr. Bunch. The answer was; No, not particularly, I don't know, it was just a combination of several things. And then there is a correction you have made here, I will find that right now. Several included the personnel records, a lot was retainability, part of it was education, part of it was conversations with the commander at McChord at the time, some of them was conversations with Colonel Knowles who was director of operations at that time.

Now is that the answer you gave at your deposition in October of 1978?

A Apparently it is, yes.

Q Do you remember giving that answer?

A Not specifically.

Q Do you remember carefully going over and reviewing the deposition transcript to the extent that you came out with about fifteen pages of very detailed corrections?

A Well I admit to making the statement, you know.

Q You made the statement.

A Yes.

Q All right, you don't remember making it though?

A Well you know, not specifically out of context; this is my deposition, and you know, I see it again—

Q Was it a true statement in 1978?

A Yes.

Q It is true?

A Yes.

Q So a lot of the factors in selecting Casson over Bunch was retainability?

A Well you know, you are taking something out of context here, and I think you are going to have to go back and take a look at that line of questioning that I was getting then, and you were trying to—

Q I would like to do that.

RT at 176–78.

Turner then explained what he had meant during his deposition when he had referred to retainability as a factor in Casson's selection.

Before judgment was entered in the case, six days after completion of the trial on September 8, 1980, Bunch filed a motion for an order striking the testimony of defendants' witnesses Lingelbach and Turner, a new trial, or relief from judgment. This motion was brought pursuant to Fed.R. Civ.P. 26(e), 59, and 60. On October 1, 1980, the district judge denied Bunch's motion and ordered judgment to be entered for the government. Judgment for the government was filed on October 7, 1980.

## II. ISSUES

These facts raise the following issues:

A. Did the district court err in denying Bunch's motion to strike the testimony of Lingelbach and Turner, or alternatively, for a new trial, or for relief from judgment?

B. Assuming that the motion was improperly denied, does the record show prejudice?

## III. DISCUSSION

### A. *Propriety of the Motion*

1. Denial of the Motion to Strike Testimony

Bunch contends that his motion to strike testimony or for alternative relief should have been granted as a sanction for a violation of Rule 26(e). Opening Brief for Appellant at 19. He argues that "the testimony of Lingelbach and Turner at trial constituted a major change in previously disclosed information and a major change in the defendant's theory of defense." *Id.* at 21. The government thus had "at least the minimal responsibility of notifying plaintiff of the change or supplementation of the information provided in discovery." Reply Brief for Appellant at 12.

Rule 26(e) provides in pertinent part: (e) Supplementation of Responses. A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:

\* \* \* \* \* \*

(2) A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which ... (B) he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

■ The determination of a violation of Rule 26(e) and the imposition of sanctions is left to the sound discretion of the trial judge. *Phil Crowley Steel Corp. v. Macomber, Inc.,* 601 F.2d 342, 344 (8th Cir. 1979). The ruling of the district court will be reversed when there has been a gross abuse of discretion. *See Scott & Fetzer Co. v. Dile,* 643 F.2d 670, 674–75 (9th Cir. 1981). We must thus determine first whether the deposition responses of Lingelbach and Turner were no longer true, and second, if no longer true, whether the government's failure to amend the responses was a knowing concealment.

First, the testimony of both Lingelbach and Turner throughout their depositions was that the decision to select Casson was not based on age but rather based on the whole-man concept; the decision to get the best person for the job taking into account all the factors that influence a person's performance. *See, e.g.*, Lingelbach deposition at 27–29; *see also* Turner deposition at 26–27. This testimony was consistent with the letter sent to Bunch in which it was stated that since Bunch did "not meet the 'whole man' qualification criteria" that Casson had been selected. Plaintiff's Exhibit at 8. The testimony was also consistent with the government's theory in the case that age was not the determining factor in the decision not to select Bunch. The government's trial brief stated that: "The evidence at trial will show that age was but one factor taken into consideration and that other factors played as significant a role in plaintiff's non-selection." Trial brief for government at 11. The government's opening statement, again mapped out the theory that Bunch would be unable to prove that age was the determining factor in his non-selection. RT at 8–11. The trial testimony of Lingelbach and Turner supported the government's theory as outlined in the opening statement. *See id.*

Bunch, however, focuses on specific trial testimony of Lingelbach and Turner. With regard to Lingelbach, for instance, he directs our attention to Lingelbach's statement that factors other than age and retainability "were paramount to the extent in distinguishing the difference between the experience of this individual [Casson] to where while those things were looked at, they were not relevant to his [Bunch's] non-selection." RT at 151–52. Bunch invites us to compare this statement with Lingelbach's deposition testimony that he thought generally "retainability would be one of the key factors." Lingelbach deposition at 27. Bunch also points to Lingelbach's testimony at trial that the OER's were the major factor in Casson's selection. *See* RT at 103–04. At his deposition Lingelbach indicated that there was no single factor that was primary to the decision to hire Casson.

Lingelbach deposition at 26. Turner's testimony at trial and his testimony at his deposition were essentially the same as Lingelbach's. Bunch would have us believe that the same problem of untruthfulness exists as to Turner's testimony.

The deposition testimony of both Lingelbach and Turner was brought to the court's attention when counsel questioned each of them about the statements they had made during their depositions. *See, e.g.*, RT at 139–41, 174–78. The trial judge did not, however, believe that the previous deposition testimony of Lingelbach and Turner was untruthful. He did not view their testimony as stating that age and retainability were never taken into account:

THE COURT: Well we have the testimony of Mr. Lingelbach that Casson was the best qualified person.

MR. MOEN: And his testimony is that age and retainability were never taken into account.

THE COURT: Well I didn't take his testimony that way, and I don't think the question *is it didn't ever in this case*, that age and retainability wasn't considered.

MR. MOEN: Well if I understood Mr. Lingelbach's testimony—

THE COURT: That isn't the burden now of the plaintiff.

MR. MOEN: Okay, I understood Mr. Lingelbach's testimony somewhat differently, your Honor, and that may be my own fault, but I thought he was saying for the first time ever in this case that age and retainability were not factors in deciding to hire Casson over Bunch.

THE COURT: Well in the letter, Plaintiff's [Exhibit] 5, they mention that, they have always said, from what I have read in their depositions that age, retainability were all the general factors considered; so we have testimony in this case that the determination was made on the best qualifications based primarily on the OER's, and the twice passing over of the plaintiff by the Air Force. That is what I have gotten out of this testimony so far, unless this witness is going to rebut that.

MR. MOEN: Well I think he can to some extent rebut the emphasis on OER's, your Honor.

RT at 181–82.

Bunch called Turner to the stand as a rebuttal witness but Turner agreed with Lingelbach's testimony, *e.g.*, RT at 160–61. Finally, we note that the trial judge found the testimony of Lingelbach and Turner, to be "entirely credible and reasonable." Finding of Fact No. 21.

■ We agree with the trial judge. Bunch has not established that the responses given by Lingelbach and Turner at their deposition, were "no longer true", as required by Rule 26(e).

■ Second, assuming Bunch had succeeded in demonstrating that the deposition testimony of Lingelbach and Turner was no longer true, Rule 26(e) only imposes a duty to amend a response when failure to disclose new facts "is in substance a knowing concealment." Fed.R.Civ.P. 26(e)(2)(B); *see also, Havenfield Corp. v. H & R Block, Inc.*, 509 F.2d 1263, 1272 (8th Cir.), *cert. denied*, 421 U.S. 999, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975). Bunch failed to present any evidence that there was a knowing concealment of new facts. To the contrary Bunch advised the trial court that the government must have been surprised by the testimony of Lingelbach and Turner:

> [A]t trial, Lingelbach and Turner testified that age and retainability were *not* factors in selecting Casson over Bunch. Obviously up to that time counsel for both sides agreed that age and retainability *were* factors, and the issues were how significant were they and does their use constitue [sic] age discrimination. Any surprise claimed by plaintiffs must, if the truth were stated, have been shared by defendants' own attorney, based on the prior statements made by the attorney.

Bunch's Memorandum of Authorities in Support of Plaintiff's Motion to Strike Testimony or for Alternative Relief at 7. [Bunch's Memorandum of Authorities] (emphasis in original).

The trial judge did not abuse his discretion in denying Bunch's motion based on Rule 26(e).

### 2. Denial of the Motion for a New Trial

■ Bunch has argued that his motion for a new trial is based on Fed.R.Civ.P. 59. *See* Reply Brief for Appellant at 13. This reference in his reply brief is the *only* reference to Rule 59 or any of its sections that Bunch makes.

Rule 59(a) of the Federal Rules of Civil Procedure provides that:

> (a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues ... (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity ... On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

On appeal we review the judge's ruling under Fed.R.Civ.P. 59(a) for an abuse of discretion. *See Saint Paul Marine Transportation Corp. v. Cerro Sales Corp.*, 505 F.2d 1115, 1118–19 (9th Cir. 1974).

Bunch has failed to set forth any basis for relief under Rule 59, nor are we referred to any case authority in support of this contention. Bunch did not indicate to the court what additional evidence would have been presented if the court had granted his motion under Rule 59. The trial judge did not abuse his discretion in denying Bunch's motion insofar as it is based on Rule 59.

### 3. Denial of the Motion for Relief from Judgment

■ Bunch also claims that relief from judgment is required under Rule 60(b)(3) for "fraud ..., misrepresentation, or other misconduct of an adverse party ...." We are referred to *Rozier v. Ford Motor Co.*, 573 F.2d 1332 (5th Cir. 1978) in support of this claim. Bunch's reliance is misplaced.

*Rozier* states that in order to bring a successful claim under Rule 60(b)(3) a party must:

(1) prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct.

(2) establish that the conduct complained of prevented the losing party from fully and fairly presenting his case or defense. Although when the case involves the withholding of information called for by discovery, the party need not establish that the result in the case would be altered.

*Id.* at 1339.

*Rozier* also states that the judge's decision on a Rule 60(b)(3) motion is reviewed for an abuse of discretion. *Id.* at 1346. In the matter before us, Bunch has offered no evidence that the verdict was obtained by fraud, misrepresentation or other misconduct. The record also reflects that Bunch had a full and fair opportunity to present his case. It was clear that the government maintained throughout the pretrial proceedings and the trial that Bunch would be unable to prove age was the determining factor in Casson's selection. Moreover, Bunch was permitted to use the alleged prior inconsistent statements to attempt to impeach Lingelbach and Turner. The trial judge did not abuse his discretion in denying Bunch's motion for relief from judgment based on Rule 60(b)(3).

## B. *If Error, Was it Prejudicial?*

■ Assuming that an error was committed under one or more of the above Rules of Civil Procedure, Bunch must establish that such error was not harmless. Rule 61 of the Federal Rules of Civil Procedure provides that no error in any ruling or order by the court is ground for a new trial or otherwise disturbing a judgment unless refusal to do so is inconsistent with substantial justice: "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." *See also United States v. 1,071.08 Acres of Land,* 564 F.2d 1350, 1353 (9th Cir. 1977).

Bunch has not indicated in what manner his substantial rights were affected. As outlined above, Bunch was aware before trial that the government's theory of defense was that age was not the determining factor in selecting Casson over Bunch. This defense theory was set forth in the pretrial order, the trial brief, and articulated during the government's opening statement. During the government's presentation of its evidence, Bunch raised no objection on the grounds of surprise nor did he raise any other claim based on any alleged change in the defense theory. Bunch did not object to the testimony of Lingelbach on his direct examination. As noted above, he had full opportunity to cross-examine Lingelbach thoroughly about deposition testimony. He also had the opportunity to question Turner, his rebuttal witness, about Turner's deposition testimony. Bunch's motion to strike their trial testimony or for alternative relief was not made until six days after the completion of the trial.

Bunch suggests that had Lingelbach and Turner not changed their position, the government "would have been in the position of defending the use of age/retainability as a determining factor in not selecting plaintiff for the job." Opening Brief for Appellant at 27. This argument is woefully unpersuasive. First, the government has never taken the position that age or retainability was a determining factor in Casson's selection. Second, the government need only show that age discrimination was not the determining factor. *Cancellier v. Federated Department Stores,* 672 F.2d 1312 at 1315 (9th Cir. 1982). Thus, Bunch had the burden of proving that, but for his age, he would have been hired. *See id.*

We find no reversible error. The judgment of the district court and the order denying Bunch's motion are AFFIRMED.