976 F.2d 737
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Pablo ORTIZ; Elizabeth Ortiz, Plaintiffs-Appellants,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign
corporation, Defendant-Appellee.
 No. 91-15259.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 13, 1992.
Decided Sept. 25, 1992.
 
 Before HUG, TANG and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Elizabeth Ortiz ("Ortiz") brought suit against State Farm Insurance Company ("State Farm") claiming that State Farm handled her insurance claim in bad faith and sought both compensatory and punitive damages. The jury found State Farm liable. Ortiz appeals numerous trial decisions contending that the district court erred in: (1) directing a verdict for State Farm on the issue of punitive damages; (2) excluding evidence pertaining to the amount of compensatory damages, (3) calculation of prejudgment interest, and (4) calculation of attorney's fees. We affirm in part and reverse in part.
 
 Punitive Damages
 
 3
 According to Arizona law, an "evil mind" is required in order to state a claim for punitive damages.
 
 
 4
 To obtain punitive damages, plaintiff must ... show that the evil hand that unjustifiably damaged the objectives sought to be reached by the insurance contract was guided by an evil mind which either consciously sought to damage the insured or acted intentionally, knowing that its conduct was likely to cause unjustified, significant damage to the insured. When defendant's motives are shown to be so improper, or its conduct so oppressive, outrageous or intolerable that such an "evil mind" may be inferred, punitive damages may be awarded.
 
 
 5
 Rawlings v. Apodaca, 726 P.2d 565, 578-79 (Ariz.1986) (citations omitted).
 
 A. Unreasonable Delay and Misconduct
 
 6
 Ortiz argues that State Farm taking one-year to handle her claim was unreasonable and, in part, dishonest because she was not told all the reasons for the delays. Ortiz argues that State Farm employees purposefully ignored her claim and acted in reckless disregard of State Farm's stated practice of making every effort to find coverage and that any confusion was to be resolved in favor of the insured. Ortiz concludes that State Farm's conduct was sufficiently outrageous to infer that it acted to injure her or was in callous disregard of her rights.
 
 
 7
 State Farm did in fact make mistakes. It misplaced the file, its response was delayed, it erroneously concluded that Jerry Ortiz's policy would provide liability coverage for Ortiz, and it wrongly interpreted Pablo Ortiz's file as providing $50,000 in Uninsured Motorist coverage. However, mistakes and oversights alone are insufficient to establish the "evil mind" required for punitive damages. Hawkins v. Allstate Ins. Co., 733 P.2d 1073, 1080 (Ariz.) (mistakes and inadvertence do not establish a claim for punitive damages), cert. denied, 484 U.S. 874 (1987); Rawlings, 726 P.2d at 573 (delayed payment of a claim due to mistakes does not even establish the tort of bad faith).
 
 B. Stacking of Coverages
 
 8
 Next, Ortiz contends that State Farm employees knew that the stacking of coverages was appropriate in deciding the amount of coverage available. Consequently, State Farm acted with an intent to harm her by deciding that the stacking of uninsured motorist coverages was unavailable.
 
 
 9
 Because Ortiz presented no direct evidence that State Farm consciously intended to harm her, State Farm's conduct must be evaluated for outrageousness, egregiousness, or some element of outrage. Rawlings, 726 P.2d at 578-79. State Farm's interpretation of case law precluded the stacking of coverages. The issue of stacking was not adequately presented until Ortiz filed her complaint. Neither outrageousness nor egregiousness is shown by State Farm's failure to interpret properly Arizona case law on the appropriateness of the stacking of coverages.
 
 C. State Farm's Litigation Positions
 
 10
 Next, Ortiz argues that State Farm's litigation conduct was outrageous because it first took the position that the "other insurance" provision of Ortiz's policy controlled the benefits to which she was entitled. State Farm then abandoned this meritless position and took the position that the "other vehicle" provision of Ortiz's policy, when read in conjunction with the anti-stacking policy of Ariz.Rev.Stat. § 20-259.01(F), precluded Ortiz from stacking the coverages. Because this position was also found inapplicable by the district court, Ortiz contends that State Farm was malicious in its attempt to avoid proper payment of her claim.
 
 
 11
 It is clear that State Farm's initial position was a meritless position. However, State Farm's subsequent positions were reasonably arguable. Ortiz has failed to prove by clear and convincing evidence that State Farm took positions with an intent to injure Ortiz or with a callous disregard for her rights. See Linthicum v. Nationwide Life Ins. Co., 723 P.2d 675, 681-82 (Ariz.1986) (stating that an insurance company's conduct, construing the policy strictly in its favor, investigating all dependent claims filed within the first year for potential denial and denying all claims upon any possible supportable basis, demonstrated conduct relevant to a claim of bad faith but not a claim for punitive damages).
 
 Compensatory Damages
 A. Exclusion of Dr. Engleman's Testimony
 
 12
 Ortiz, relying on Johnson v. H.K. Webster, Inc., 775 F.2d 1, 5-9 (1st Cir.1985), argues that the district court's exclusion of Dr. Engleman's testimony was an extreme sanction that was unwarranted. Ortiz argues that her testimony was not an adequate substitute for the qualified testimony of a physician confirming a medical diagnosis of post-traumatic stress disorder.
 
 
 13
 The district court relied on the following in deciding to exclude the testimony and report:
 
 
 14
 1. Counsel for Ortiz had referred Ortiz to Dr. Engleman for further treatment.
 
 
 15
 2. State Farm did not know of the additional treatment and did not have reason to know.
 
 
 16
 3. Ortiz had reason to know of Dr. Engleman's treatment of Ortiz and any subsequent records of that treatment.
 
 
 17
 4. Ortiz would be permitted to testify fully on her emotional distress and any treatment she had received.
 
 
 18
 Rather than call for a continuance and allow State Farm to depose Dr. Engleman, the district court decided that the prejudice to Ortiz in excluding the testimony and evidence was adequately cured by allowing Ortiz to testify about the treatment.
 
 
 19
 Because of the wide discretion given district courts on this issue, we affirm its decision. See Bunch v. United States, 680 F.2d 1271, 1280-82 (9th Cir.1982).
 
 
 20
 B. State Farm's Comments Concerning the $15,000 Check
 
 
 21
 Ortiz contends the district court erred in allowing State Farm to inform the jury that Ortiz had not cashed the $15,000 check from State Farm in that it allowed State Farm to argue the defense of mitigation when mitigation of damages had not been specially pleaded as required by Fed.R.Civ.P. 8(c).
 
 
 22
 State Farm did not argue that Ortiz had a duty to mitigate damages, but only responded to testimony at trial that Ortiz was unable to get special care because of a lack of money. Argument on whether Ortiz cashed the check was allowed on the issue of State Farm's good faith and its duty to pay uncontested claims. Therefore, the district court did not err in ruling that State Farm could argue the fact of payment, but not argue that Ortiz was under a duty to mitigate damages.
 
 
 23
 C. District Court's Disclosure of Reasons for Granting Summary Judgment on the Stacking of Coverages Issue.
 
 
 24
 Ortiz contends the trial court erred in disclosing its opinion to the jury that Ortiz was entitled to the benefit of stacking of coverages of all four policies only as a result of a recent change in Arizona law. Ortiz contends that this was prejudicial because the jury was misled in believing that the $60,000 ultimately recovered in her breach of contract claim was not owed until 1990, rather than five years earlier. Consequently, Ortiz argues that she was deprived of compensation for emotional distress for the five year period prior to 1990.
 
 
 25
 In a bad faith damage award, the length of time an insured is wrongfully deprived of benefits is always an important factor. However, the issue is not whether the court misinterpreted state law, but whether it abused its discretion in its comments to the jury. Shad v. Dean Witter Reynolds, Inc., 799 F.2d 525, 531 (9th Cir.1986). Ortiz makes no argument that the court was biased or partial in favor of State Farm. Therefore, we conclude that the court did not abuse its discretion in making known its decision on summary judgment and its reasoning.
 
 
 26
 Based on the foregoing, we conclude that Ortiz is not entitled to a new trial on compensatory damages.
 
 Prejudgment Interest
 
 27
 Ortiz contends that prejudgment interest on all of her contract benefits should have commenced 30 days after the accident. Alternatively, she argues that the district court should have awarded her prejudgment interest on the uncashed $15,000 check from State Farm starting 30 days after her accident.
 
 
 28
 The district court refused to award prejudgment interest on the $15,000 until November 1985 rather than October 1984, because it concluded that the claim was not liquidated until payment was made to Ortiz.
 
 
 29
 We conclude that the court abused its discretion in picking November 1985, as the date the $15,000 claim became due. Picking that date ratifies State Farm's unreasonable delay in determining what coverages applied to Ortiz's claim. Under Ariz.Rev.Stat. § 20-462, any first party insurance claim not paid within 30 days shall bear interest from the date the claim is received. Therefore, Ortiz's claim was liquidated and she is entitled to prejudgment interest on the $15,000, starting 30 days from the filing of her accident claim with State Farm.
 
 
 30
 Next, Ortiz argues that because State Farm could have determined the applicability of the stacking of coverages prior to the institution of her lawsuit, prejudgment interest should commence with the filing of her claim rather than with the filing of her complaint.
 
 
 31
 We agree with the district court that prejudgment interest on Ortiz's $45,000 claim should commence 30 days after the filing of Ortiz's complaint. The claim was liquidated at the time of the filing of the complaint. The district court was within its discretion when it determined that prejudgment interest commenced 30 days after the filing of the lawsuit.
 
 Attorney's Fees
 
 32
 Concerning the amount of attorney's fees recoverable by Ortiz, we agree with the district court for the reasons stated in its January 4, 1991, post-trial ruling.
 
 CONCLUSION
 
 33
 The district court's directed verdict in favor of State Farm on the issue of punitive damages is affirmed.
 
 
 34
 The district court's decision to exclude evidence pertaining to compensatory damages was not an abuse of discretion and is affirmed.
 
 
 35
 The district court's prejudgment interest calculation as to the $15,000 claim is reversed and prejudgment interest shall be awarded starting 30 days from the filing of the accident claim.
 
 
 36
 The district court's prejudgment interest calculation as to the $45,000 claim is affirmed.
 
 
 37
 The district court's decision as to attorney's fees is affirmed.
 
 
 38
 AFFIRMED in part, and REVERSED in part. Costs shall be awarded to plaintiffs-appellants.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3