54 F.3d 776
 37 U.S.P.Q.2d 1121
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Samuel A COSTELLO and Arthur Murray International, Inc.,
Plaintiffs-Appellees Cross-Appellants,
v.
Victor Dominic LUNGARO, Defendant-Appellant Cross-Appellee,
Jon R. Burney, Trustee, Defendant-Appellee.
 Nos. 93-3755, 93-3806.
 United States Court of Appeals, Sixth Circuit.
 May 11, 1995.
 
 Before: LIVELY, JONES and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant, Victor D. Lungaro, appeals summary judgment for the plaintiffs, and plaintiffs, Arthur Murray International, Inc., and Samuel A. Costello (collectively "AMI"), cross-appeal summary judgment for defendant, and Lungaro also appeals several evidentiary rulings during the trial of this action. For the reasons stated herein, we affirm in part and reverse and remand in part.
 
 I.
 
 2
 AMI licenses and franchises dance studios throughout the United States. In 1940, AMI granted a franchise to Costello under the terms of a Master Franchise Agreement. In 1969, Costello entered into a Sub-License Agreement with Lungaro, granting Lungaro the right to operate AMI-franchised dance studios in the Cleveland metropolitan area.
 
 
 3
 In the early 1980's, a dispute arose and as a result Lungaro deposited his royalty fees into an escrow account. Lungaro contended that AMI's sale of mail-order videotape dance lessons violated his exclusive rights under the Sub-License Agreement. AMI contended that Lungaro's income from his operation of an independent dance competition known as the North Coast Ballroom Classic should be considered as gross receipts and included in the calculations of the royalties due to AMI. For nonpayment of royalties, AMI terminated Lungaro's franchise.
 
 
 4
 On March 20, 1992, AMI filed its complaint alleging eight causes of action against Lungaro: I. breach of contract for his failure to pay royalties; II. breach of covenant of noncompetition; III. unfair competition; IV. trademark infringement; V. copyright infringement; VI. violation of U.S.C. Sec. 1125(a); VII. violation of Ohio Deceptive Trade Practices Act; and VIII. trade secret violations. Lungaro filed an answer and counterclaim alleging wrongful termination and breach of contract due to AMI's sale of dance instruction videotapes.
 
 
 5
 The district court found that Lungaro had breached the Sub-License Agreement by his failure to pay royalties and that as a result, AMI had lawfully terminated the Sub-License Agreement. Consequently, summary judgment was granted in favor of AMI on Count I of its complaint and Count I of Lungaro's counterclaim for wrongful termination. The district court also granted summary judgment in favor of AMI on Counts III through VII and in favor of Lungaro on his counterclaim against AMI for the sale of the videotapes.
 
 
 6
 A trial was held on the issues of damages to AMI on its claim for breach of the Sub-License Agreement for failure to pay royalties; damages to AMI for trademark and copyright violations; injunctive relief to AMI for enforcement of the non-competition agreement; and damages to Lungaro for AMI's sale of the dance videotapes. The district court granted a directed verdict to AMI on its damages claim against Lungaro, and the jury returned a verdict of zero on Lungaro's videotape claim.
 
 II.
 
 7
 AMI contends that because the proceeds of the trust account were paid to AMI at the conclusion of the case, Lungaro's appeal on certain issues is moot. In Uyeda v. Brooks, 348 F.2d 633, 634 (6th Cir. 1965), this court held that "a defeated party's compliance with a district court ruling does not bar him from appealing unless his compliance has made it impossible for the appellate court to grant effective relief. This is true even if the defeated party has failed to avail himself of an opportunity to obtain a stay of the proceedings or a supersedeas." (Citations omitted). Here, the trustee of the trust account, in compliance with the judgment, paid AMI the proceeds of the trust account. Lungaro's compliance has not made it impossible for this court to grant effective relief. Therefore, this contention is without merit.
 
 III.
 
 8
 Lungaro contends that the district court improperly determined that AMI's termination of the Sub-License Agreement was lawful based upon his refusal to pay royalties. Lungaro argues that this was more properly a question of fact for the jury to decide. We find this argument to be without merit.
 
 
 9
 The Sub-License Agreement specifically provided for termination upon violation. Under paragraphs 3 and 5 of the Sub-License Agreement, Lungaro was required to pay royalties in specified percentages, on a weekly basis. Paragraph 12 of the Sub-License Agreement is entitled "As to effect of violation of Agreement by Lungaro" and states in pertinent part, "In the event that Lungaro violates this Sub-License Agreement it may be terminated by Costello." Lungaro concedes that he terminated payment of the royalties. This action clearly constituted a violation of the Sub-License Agreement. Therefore, under the express terms of the contract, AMI was entitled to exercise its right of termination as set forth in paragraph 12.
 
 
 10
 Generally, the materiality of a party's performance is a question of fact for the jury. However, this general proposition is inapplicable here. In ARP Films, Inc. v. Marvel Entertainment Group, Inc., 952 F.2d 643 (2d Cir. 1991), a licensee alleged breach by the copyright owner, withheld payments and accountings from the copyright owner, yet continued to receive benefits under the contract. The court affirmed the district court, stating, "The district court correctly concluded that the breach by plaintiffs in failing to make the payments and provide the reports required by the 1976 Agreement was material as a matter of law, thus authorizing Marvel to terminate the contract." Id. at 649.
 
 
 11
 Lungaro withheld payments in violation of the express terms of the contract while he continued to enjoy the benefits thereunder. Therefore, we find that "[t]he failure of [Lungaro] to pay the [weekly] franchise fees [was] a breach of contract as to which there exists no genuine factual issue." McDonald's Corp. v. Robert A. Makin, Inc., 653 F. Supp. 401, 403-404 (W.D.N.Y. 1986).
 
 
 12
 Lungaro's contention that AMI's prior conduct in selling the videotapes constituted a material breach of the Sub-License Agreement which excused him from paying royalties to both AMI and Costello is similarly without merit. "Under basic contract principles, when one party to a contract feels that the other contracting party has breached its agreement, the non-breaching party may either stop performance and assume the contract is avoided, or continue its performance and use for damages. Under no circumstances may the non-breaching party stop performance and continue to take advantage of the contract's benefits." S & R Corp. v. Jiffy Lube Intern., Inc., 968 F.2d 371, 376 (3d Cir. 1992).
 
 
 13
 Based upon the foregoing, the district court's determination that Lungaro materially breached the contract and that AMI's termination of the Sub-License Agreement was lawful is affirmed.
 
 IV.
 
 14
 The district court entered summary judgment against Lungaro for trademark and copyright infringement for the reason that he continued to use AMI's marks and methods after his franchise was terminated. Review of a district court's grant of summary judgment is de novo. Moore v. Philip Morris Cos., Inc., 8 F.3d 335 (6th Cir. 1993). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In responding to a summary judgment motion, the non-moving party must set "forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).
 
 
 15
 As discussed above, the district court correctly determined that the termination of Lungaro's franchise was lawful. Therefore, given Lungaro's continued use and enjoyment of the benefits under the Sub-License Agreement after its termination, the district court's entry of summary judgment for such trademark and copyright infringement is affirmed.
 
 V.
 
 16
 The district court dismissed Count IV of Lungaro's second answer and counterclaim for failure to state a claim. "Dismissals of complaints for failure to state a claim upon which relief can be granted are subject to de novo review." Mayer v. Mylod, 988 F.2d 635, 637 (6th Cir. 1993)(citation omitted). All factual allegations are considered true. Jenkins v. McKeithen, 395 U.S. 411, 421-22 (1969). If an allegation is capable of several inferences, the allegation must be construed in a light most favorable for the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).
 
 
 17
 "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. Mayer, 988 F.2d at 638 (citation omitted). "The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts." Id. (citations omitted).
 
 
 18
 Count IV of Lungaro's second answer and counterclaim alleged a claim for the dilution of the Arthur Murray name under a breach of fiduciary duty theory. Lungaro cites the ruling in Arnott v. The American Oil Company, 609 F.2d 873, 880-84 (8th Cir. 1979), cert. denied, 466 U.S. 918 (1980), for the proposition that inherent in a franchise relationship is a fiduciary duty and a franchisor has an obligation of dealing fairly and in good faith with its franchisee. We reject this argument.
 
 
 19
 The position advanced in Arnott is a "distinctly minority position and numerous courts have refused to follow the case." Capital Ford Truck Sales, Inc. v. Ford Motor Co., 819 F. Supp. 1555, 1579 n. 31 (N.D.Ga. 1992). In fact, the Eighth Circuit later stated that "Arnott does not stand for the proposition that the grant of a franchise of itself in all instances imposes on the franchisor all of the duties and responsibilities which traditionally pertain to a true fiduciary." Bain v. Champlin Petroleum, 692 F.2d 43, 48 (8th Cir. 1982) (citations omitted).
 
 
 20
 Further, this court has also declined to follow that minority position. In O'Neal v. Burger Chef Systems, Inc., 860 F.2d 1341 (6th Cir. 1988), we followed the general rule that "franchise agreements do not give rise to fiduciary or confidential relationships between the parties." Id. at 1349. The district court's dismissal of the claim "for breach of fiduciary duty ... must be dismissed because no such duty exists as a matter of law." AAMCO Transmissions, Inc. v. Harris, 759 F. Supp. 1141, 1147 (E.D.Pa. 1991)(citing O'Neal).
 
 
 21
 Additionally, this claim was not pled as a breach of fiduciary duty but instead as a breach of contract, alleging that AMI and Costello are required by the agreements to enforce and support high standards and policies regarding the selection of other AMI licensees or sub-licensees. However, a review of the agreements reveals that the only provisions which even arguably contain such a duty place this duty on Lungaro, not AMI or Costello.
 
 
 22
 Neither the Master Franchise Agreement nor the Sub-License Agreement contains a duty, either express or implied, that AMI must enforce its standards and/or policies for the benefit of Lungaro against other AMI licensees or sub-licensees or maintain the value of the Arthur Murray name, trademarks and methods. The district court's reliance upon Staten Island Rustproofing, Inc. v. Ziebart Rustproofing Co., 70 Business Franchise Guide, (CCH) p 8492 (E.D.N.Y., Nov. 15, 1985), was appropriate here. In Staten Island, a franchisee sued the franchisor for breach of contract because the franchisor failed to terminate other franchisees for shoddy work. The franchisee claimed that this lowered the franchisor's reputation and, hence, the plaintiff's business. The court dismissed the claim as there was no provision in the franchise agreement which explicitly required the franchisor to maintain the value of the franchisee's license.
 
 
 23
 Based upon the foregoing, we affirm the district court's dismissal of Count IV of Lungaro's second amended complaint and counterclaim.
 
 VI.
 
 24
 The district court limited Lungaro's expert testimony for his videotape claim to lost profits and refused to allow testimony on the theory of diminution of value. Rule 702 of the Federal Rules of Evidence provides:
 
 
 25
 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
 
 
 26
 "Whether the two conditions to the admissibility of expert testimony set forth in Rule 702 (a qualified witness who can assist the trier of fact) have been satisfied, involves a preliminary question for the trial court; and is a determination largely committed to that court. Appellate courts permit trial courts 'the widest possible discretion' in making these determinations, and will not reverse a trial court unless its decision was 'clearly erroneous' or 'manifestly erroneous."' Morvant v. Const. Aggregates Corp., 570 F.2d 626, 634 (6th Cir.), cert. denied, 439 U.S. 801 (1978)(citations omitted). "In applying this deferential policy, appellate courts have even upheld the determination of a trial judge, while admitting that if sitting as a trial court they would have reached the opposite conclusion on admissibility." Id. (citation omitted).
 
 
 27
 The district court found that the appropriate theory of damages under the circumstances was lost profits which is an acceptable method by which to measure damages. Malley-Fuff & Associates, Inc. v. Crown Life Insurance Co., 734 F.2d 133, 148 (3d Cir.), cert. denied, 469 U.S. 1072 (1984). This finding was not clearly erroneous and is affirmed.
 
 
 28
 Several days into the trial of this action, Lungaro attempted to introduce evidence of lost profits for the time period from 1989 through 1991. Upon objection of AMI, the court ruled to limit Lungaro's evidence to only that encompassed by his response to the interrogatories (which was a comparison of revenues in 1991 and 1992). AMI argued that the new evidence presented a new damage theory with new facts previously unavailable to it prior to trial purporting to support this theory and its introduction at trial would have been an ambush. Lungaro argues that this "new" evidence was hastily prepared in response to the district court's exclusion of his other testimony and that this documentary evidence was based upon information already available to AMI. Lungaro contends that the proffered evidence was merely a summarization of information already available to AMI and was therefore no surprise.
 
 
 29
 "The determination of a violation of Rule 26(e) and the imposition of sanctions is left to the sound discretion of the trial judge." Bunch v. United States, 680 F.2d 1271, 1280 (9th Cir. 1982)(citations omitted). "The ruling of the district court will be reversed when there has been a gross abuse of discretion." Id. (citations omitted). "Because of its considerable discretion in admission of evidence reversible error is found only in exceptional circumstances." F & S Offshore, Inc. v. K.O. Steel Castings, Inc., 662 F.2d 1104, 1106 (5th Cir. 1981)(citations omitted). Further, "[t]he rule seeks to prevent 'trial by ambush."' O'Donnell v. Georgia Osteopathic Hospital, Inc., 748 F.2d 1543, 1548 (11th Cir. 1984) (citations omitted).
 
 
 30
 While "the granting of a continuance is a more appropriate remedy than exclusion of evidence, ... the court is vested with authority to impose reasonable sanctions for breach of reasonable rules." F & S Offshore, Inc., 662 F.2d at 1108. The district court specifically found that to allow the admission of this evidence would have been to "ambush" AMI. The court also inquired as to why Costello had failed to supplement his answers to interrogatories and found his explanation unsatisfactory. Additionally, neither party requested a continuance or mistrial based upon either the attempted introduction of this evidence or the district court's exclusion of it. While members of this court may have reached a different conclusion regarding the exclusion of this evidence, we cannot say that the district court abused its discretion.
 
 
 31
 The district court limited Lungaro's evidence of damages from AMI's sale of videotapes to February 3, 1992, the date of termination. As the Sub-License Agreement was lawfully terminated by AMI, Lungaro cannot complain of damage allegedly caused by AMI's sale of videotapes after the termination date. Therefore, the district court did not abuse its discretion in so limiting Lungaro's evidence.
 
 
 32
 Further, even assuming arguendo that the district court erred in excluding Lungaro's damage evidence, such exclusion would be harmless error. This court has stated, "[N]o error in the admission or exclusion of evidence... is ground for disturbing a judgment, unless refusal to take such action appears to the court inconsistent with substantial justice." Hoag v. City of Detroit, 185 F.2d 764, 766 (6th Cir. 1950)(citations omitted). Here, Lungaro never established, even in his proffered but excluded testimony, that he lost profits. In fact, Lungaro's revenues as he reported them to AMI generally increased from 1966 through 1992. Lungaro failed to establish a proximate causal relationship between the sale of the videotapes and any alleged reduction in his business. Absent a proximate causal relationship, Lungaro could not have sustained his claim. Deitsch v. The Music Co., 6 Ohio Misc. 2d 6, 7 (Hamilton Co. Mun. Ct. 1983) (In any contract action, damages must be proximately caused by the breach and must be the natural and probable consequence of the breach).
 
 VII.
 
 33
 The district court ruled that AMI's advertising and sale of mail order dance instruction videotapes constituted a breach of the Sub-License Agreement and granted summary judgment in favor of Lungaro on Count II of his counterclaim. The terms and conditions of a written contract, which on its face is full and complete, must control the rights and obligations of the parties. Hunt v. Triplex Safety Glass Co. of North America, Inc., 60 F.2d 92, 94 (6th Cir. 1932); First Nat'l Bank of Van Wert v. Houtzer, 96 Ohio St. 404, 406 (1917). "The parties under the issues ... are presumed to have intended to contract in the manner and form in which they did contract. They are presumed to have intended to have given to the language of the contract the ordinary and usual meaning given to such language." Id. at 407. "Judicial construction of a contract requires a determination of the meaning of the language used, not the ascertainment of some possible but unexpressed intent of the parties." Hunt, 60 F.2d at 94.
 
 
 34
 This court has reviewed both the Sub-License Agreement and the Master Franchise Agreement in their entirety and we find that the language of the agreements is clear and unambiguous. The right which Lungaro possessed was a limited exclusive right to use the AMI name, trademarks and methods within his territory and only in connection with dancing schools. Thus, AMI's sale of dance videotapes did not violate Lungaro's exclusive right. Therefore, the summary judgment in favor of Lungaro on his videotape claim is reversed, and the district court should enter summary judgment in favor of AMI on this claim.
 
 VIII.
 
 35
 AMI contends that the district court erred when it denied its request for attorney fees and costs. Specifically, AMI argues that the district court based its decision upon two incorrect conclusions, i.e., that AMI had abandoned its trademark violation claims and that neither party was a prevailing party, and that as a result of these incorrect premises, these issues should be remanded for further determination.
 
 
 36
 15 U.S.C. Sec. 1117(a) provides, in pertinent part:
 
 
 37
 When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, or a violation under section 1125(a) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, ..., to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its directions. ... The court in exceptional cases may award reasonable attorney fees to the prevailing party.
 
 
 38
 The decision to award costs is committed to the sound discretion of the district court, and is accordingly reviewed for abuse of discretion. Marvel Entertainment Group, Inc., 952 F.2d at 650. Further, the last sentence of 15 U.S.C. Sec. 1117 "has been generally considered as making the award discretionary even if it fits within the statutory standard of an exceptional circumstance." International Olympic Committee v. San Francisco Arts & Athletics, 781 F.2d 733, 738 (9th Cir. 1986). While the statute itself contains no definition of what constitutes "exceptional circumstances," the Senate Report states that exceptional circumstances include conduct that is "'malicious,' 'fraudulent,' 'deliberate,' or 'wilful."' S.Rep. No. 1400, 93d Cong., 2d Sess. 2, reprinted in 1974 U.S. Code Cong. & Ad. News 7132, 7133.
 
 
 39
 With this standard in mind, we now proceed to AMI's contention that the district court's decision is based upon an incorrect premise of abandonment by AMI of its trademark claims. A review of the trial transcript reveals the following exchange that took place between the court and counsel for AMI which is pertinent to the district court's ruling:
 
 
 40
 THE COURT: You're not claiming any damages for damage to the trademark or the use of the name after you've terminated him; is that what you're telling me?
 
 
 41
 MR. POLLOCK: Correct. All we're claiming after termination is the royalties that he would have paid up until the time he stopped being Arthur Murray. Eight percent, that's our damages, plus the amount that he didn't pay prior to the termination.
 
 
 42
 Given this exchange and as there was no finding that this is an exceptional case, the district court did not abuse its discretion in denying attorney fees and costs.
 
 IX.
 
 43
 The Sub-License Agreement contains a non-competition covenant which provides as follows:
 
 
 44
 In the event that Lungaro violated this Sub-License Agreement, it may be terminated by Costello. Upon receiving notice of termination, Lungaro agrees that he will not engage in the dancing business for a period of two (2) years in Cuyahoga County, Ohio. This means that he will not teach dancing, manage or help manage a dance studio, solicit sales of dancing lessons or supervise dancing instruction.
 
 
 45
 Covenants not to compete are enforceable in Ohio as long as the restrictions imposed are reasonable. Keller v. Graphic Systems of Akron, Inc., 422 F. Supp. 1005, 1013 (N.D. Ohio 1976)(Contie, J.); Raimonde v. Van Vlerah, 325 N.E.2d 544, 547 (Ohio 1975);
 
 
 46
 The district court did not determine whether the restrictions were reasonable. It summarily denied AMI's claim to enforce the non-competition agreement based upon its finding that AMI breached the Sub-License Agreement by the sale of dance videotapes. As the district court's finding that AMI breached the Sub-License Agreement by its sale of the videotapes is erroneous, it necessarily follows that any other determination by the district court based on this incorrect ruling is also erroneous. Therefore, we reverse the court's order refusing to enforce the non-competition clause of the Sub-License Agreement and remand this issue for a determination of its enforceability.