James L. POLK and Mattie B. Polk,
Plaintiffs–Appellants,

v.

DIXIE INSURANCE COMPANY,
Defendant–Appellee.

No. 88–4737
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 11, 1990.

Jim Waide, Tupelo, Miss., for plaintiffs-appellants.

Suzanne Saunders, Sheila R. Fortenberry, Saunders, Abel & Fortenberry, Jackson, Miss., for defendant-appellee.

Before POLITZ, GARWOOD, and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

This is a Mississippi law diversity suit brought in January 1987 by plaintiffs-appellants James L. Polk (Polk) and Mattie B. Polk against defendant-appellee Dixie Insurance Company (Dixie), the insurer of Polk's 1981 Cadillac Seville which was totally destroyed in a July 31, 1986 fire, for insurance policy proceeds due for the loss of the car and for punitive damages for bad faith denial of the claim. Dixie defended on the grounds of arson. The district court granted Dixie's motion for summary judgment on the punitive damages claim, and the policy claim was thereafter tried to a jury which returned a verdict for Dixie. The district court then rendered judgment for Dixie on the verdict, and this appeal by plaintiffs followed.

■ Plaintiffs raise three claims of error. They first contend that the district court erred in refusing their timely motion that Dixie's counsel be required to "indicate some non-racial motive for exercising" two peremptory challenges "on the only black jurors that were tendered to her," as the plaintiffs were black "and all the representatives at the defense table are white." Before Dixie's counsel responded, the district court ruled that the "motion will be denied, the Government not being involved in this case." Plaintiffs rely on *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). However, in *Edmonson v. Leesville Concrete Co., Inc.,* 895 F.2d 218 (5th Cir.1990), this Court, en banc, held that *Batson* does not apply to a civil suit solely between private parties. Consequently, we reject plaintiffs' first claim of error.

The second claim is that the district court erred in permitting certain testimony by Dixie's witness Embrey, the independent insurance agent through whom Polk procured the Dixie policy in question in August 1985. The complained of testimony, which came on the second day of trial, was that on July 21, 1986—some ten days before the Cadillac burned—Embrey had

written Polk advising him that the policy was due for renewal on August 9, 1986 and that the premium for the renewal policy would be $435 higher than that for the current policy; that Polk called Embrey two or three days after the letter was sent and "he was upset about it because of how much increase it was" and could not understand why it was "that much higher" since he had not had any claim or accident or tickets in the past year; and that Embrey explained to him that this was the result of a new rating system being used by Dixie and he "had a high rated car," was twenty-five years old and single, and had two or three speeding or driving with suspended license violations charged against him and "so he was in a high rated class."

■ The sole basis for objection to this testimony was that it tended to show an arson motive on Polk's part not disclosed in Dixie's answer, filed some seven months before trial and never updated, to one of plaintiffs' interrogatories. The interrogatory and answer in question were as follows:

"State the complete factual basis of your claim that Plaintiff intentionally burned his own automobile."

and

"... James L. Polk, owner and insured of the burned automobile, had the opportunity to burn his own automobile as per his testimony and statements, he had the motive based upon the fact that he was out of work and behind on his car payment and there was an incendiary act as revealed by three fire experts."

At a hearing on this objection out of the jury's presence, counsel for Dixie advised the court that she did not know of Embrey's anticipated testimony in this respect until the previous day. She had subpoenaed Embrey—who was listed as a Dixie "fact" witness (but without other indication of the subject matter of his testimony) on the pretrial order filed some seven months before trial—to testify in respect to Polk's claim that when he purchased the Dixie policy he did so with the understanding that it covered his medical expenses (expenses of the kind which he claimed to

have incurred when he allegedly jumped out of the Cadillac when it, according to him, went off the road and burned up on July 31). Embrey corroborated Dixie's counsel's assertions in this respect, testifying that he did not tell her or Dixie of the above-mentioned premium matter until the day before, although he had previously talked with her about Polk's claim concerning the nature of the coverage provided by the policy and whether it included medical expenses.

■ The district court clearly credited this explanation, and refused to exclude the testimony. Review of its ruling is under an abuse of discretion standard. *See Murphy v. Magnolia Electric Power Ass'n*, 639 F.2d 232, 234 (5th Cir.1981) ("the district judge enjoys considerable discretion"); *Bunch v. United States*, 680 F.2d 1271, 1280 (9th Cir.1982) ("left to the sound discretion of the trial judge," reversible in instances of "a gross abuse of discretion"). We are unable to find any such abuse here. *See O'Donnell v. Georgia Osteopathic Hospital, Inc.*, 748 F.2d 1543, 1547–49 (11th Cir.1984). In the first place, the duty to update interrogatory answers exists only when it is learned that the original answer is no longer true and the failure to amend amounts in substance to a knowing concealment. *Id.* at 1548; *Bunch*, 680 F.2d at 1282. Here the district court found, on adequate evidence, that that was not the case. Moreover, we normally do not reverse for unfair surprise unless "a completely new issue is suddenly raised or a previously unidentified expert witness is suddenly called." *F & S Offshore Inc. v. K.O. Steel Castings, Inc.*, 662 F.2d 1104, 1108 (5th Cir.1981). Assuming, *arguendo*, that the same rationale should apply to a crucial fact witness, nevertheless Embrey was listed as a fact witness and the issue of financial motivation had clearly been raised. Further, the usual remedy for surprise is to request a continuance. *See O'Donnell*, 748 F.2d at 1549. Here, however, not only was there no request for a continuance, there was not even any claim—certainly no express or unmistakably implied claim—of surprise below.

We are unable to say that the district court abused its discretion in allowing the challenged testimony.

■ Plaintiffs' third and final claim of error is that the district court erroneously granted summary judgment against plaintiffs on their punitive damages claim. Plaintiffs concede that "the insurance company's expensive experts no doubt afforded evidence that the fire was incendiary" and "[t]here is also no doubt the insured [Polk] had the 'opportunity'" to start the fire, but contend that there was no summary judgment showing that Dixie "prior to denying the claims" had "any evidence of motive," because its only then evidence of motive was "the fact that the insured had been laid off from work, and was behind one car payment." It is argued that this evidence was insufficient to show motive because the insured likely could have gotten as much by selling the car as by burning it and collecting the insurance.

Plaintiffs' argument in this connection is made in what can only be characterized as a bizarre context. Plaintiffs do not challenge the jury's verdict that no recovery is due on the insurance policy,[1] a finding that in the context of this case necessarily implies that Polk intentionally burned the Cadillac.[2] Although Mississippi law is not clear on the point, it would seem most unusual—to say the least—to authorize recovery of punitive damages for the denial of a claim which was not due or owing and which the plaintiff had no right to have paid. It is true that in several opinions, the Mississippi Supreme Court has stated that

the question of punitive damages turns on assessment of the insurance company's conduct in light of the information available to it when acting on the claim. *See, e.g., State Farm Fire and Cas. Co. v. Simpson,* 477 So.2d 242, 252 (Miss.1985). Nevertheless, this seems designed to prevent an award of punitive damages even though later events prove the insurance company's denial of claim to have been mistaken, so long as it did not act in bad faith or with gross negligence at the time or times it denied the claim. That Mississippi law does not contemplate punitive damages for denial of an *invalid* claim is reflected in statements in several Mississippi Supreme Court opinions which clearly *assume* the validity of the claim. Thus, in *Progressive Casualty Ins. Co. v. Keys,* 317 So.2d 396 (Miss.1975), the court indicated that "[p]unitive damages are not recoverable for the *breach* of a contract, *unless such breach* is attended by intentional wrong, insult, abuse or such gross negligence as to consist of an independent fact." *Id.* at 398 (emphasis added). Plainly, a *breach* of contract is contemplated. Similarly, in *Standard Life Ins. Co. v. Veal,* 354 So.2d 239 (Miss.1977), the court, in justifying the availability of punitive damages in insurance company bad faith refusal to pay cases, speaks time and again of the refusal to pay "a *legitimate* claim." *Id.* at 248 (emphasis added). We doubt that in speaking of "legitimate" claims, the court was including those which were invalid and not owing. *Veal* also speaks of the need for punitive damages to be available

---

**1.** The jury also found for Dixie on its counterclaim against plaintiffs for abuse of process in bringing the instant suit against it to force it to pay an invalid claim, but found no damages to Dixie on the counterclaim.

**2.** As the district court charged the jury, it was undisputed that the Dixie policy was validly issued and in effect, with Polk as insured, covering the car at the time it burned, that the car was a total loss, and that Dixie paid nothing. The court instructed that Dixie claimed "Polk was guilty of fraud by committing arson" and that "[i]t is your duty to return a verdict in favor of James Polk and Mattie B. Polk, unless the insurance company, the Defendant, has proved to you by clear and convincing evidence that

James L. Polk was guilty of fraud in burning the automobile."

The court also instructed that plaintiffs could not recover "[i]f you find ... that the Plaintiffs ... have misrepresented material facts or have sworn falsely to the insurance company after the loss." However, it seems clear that the jury verdict denying plaintiffs' claims was based on a finding of arson, and that any material misrepresentation would be in that connection. The case was tried and argued simply on an arson theory. Dixie argued nothing other than arson. As plaintiffs' counsel accurately told the jury in his argument: "It is a simple case in which either the insurance company has proved to you by clear and convincing evidence that James Polk burned this car or they haven't."

so that insurance companies will not force "an inadequate settlement or avoid payment entirely." *Id.* Surely, however, the punitive damages rule is not intended to pressure settlement or payment of *invalid* claims, which simply prejudices the insurance buying public generally even apart from its evident injustice otherwise.[3] Further, in *Blue Cross & Blue Shield of Miss. v. Campbell*, 466 So.2d 833, 843 & n. 4 (Miss.1984), the court stated that in nearly all cases where the claimant was *not* entitled to a directed verdict on the issue of policy liability, the insurance company *would* be entitled to a directed verdict on bad faith refusal, and that in the rare case where the insurance company was not so entitled, it would be proper to submit the "issue of liability [under the policy] to the jury first, and *if* the jury finds for the plaintiff, *then* submit[ ] the issue of punitive damages based on bad faith." *Id.* at n. 4 (emphasis added).[4] This plainly implies that in no case may the plaintiff recover bad faith refusal punitive damages if it is determined that the denied claim was invalid and not owing.[5]

Even if we assumed that Mississippi would go so far as to allow punitive damages for the bad faith handling of an *invalid* claim in some instances—for example, if the claim were made reasonably and in good faith and the insurer's egregious conduct harmed the claimant in some way distinct from the damage which would result from merely denying the claim[6]—we simply cannot bring ourselves to conclude that she would go still further and allow punitive damages to one whose invalid claim was denied at a time when there was no arguable reason for denial but which was later established to be false and fraudulent. Such a rule, we must presume, would shock the conscience of even the most enthusiastic advocate of awarding punitive damages against insurers. Hence, the unchallenged verdict here on the policy claim concludes the punitive damages issue.

 In any event, the district court's summary judgment ruling was clearly correct, considered on its own. While arson as a policy defense must be proved by the insurer by clear and convincing evidence, *McGory v. Allstate Ins. Co.*, 527 So.2d 632 (Miss.1988), the plaintiff has the burden of proof on bad faith refusal and lack of an arguable basis for denial. *See Blue Cross*, 466 So.2d at 844 ("[T]he plaintiff has a heavy burden to demonstrate to the trial court that there was no reasonably arguable basis for the insurance carrier to deny the claim. Unless he so demonstrates, the trial court as a matter of law is under a duty to remove any punitive damages claims...."). The plaintiff's burden in this respect likewise exists at the summary judgment stage where the insurance company presents an adequate *prima facie* showing of a reasonably arguable basis for denial so as to preclude punitive damages. *See American Manufacturers Mutual Liability Ins. Co. v. Cupstid*, 673 F.Supp. 186, 188 (S.D.Miss.1987). While, at least in a circumstantial evidence case, the policy defense of arson requires a showing of motive as well as of incendiary origin and opportunity, *McGory*, it is by no means clear that in order to have an arguable reason to deny a claim the insurance company must *then* be able to *prove* that it is invalid, as opposed to having a good reason to believe that it is.[7] In any event, there was concededly an adequate summary judgment showing of incendiary origin and opportunity—indeed, Polk was the only one on the scene—and at least a colorable showing of motive, Polk's having been laid

---

**3.** In *Eichenseer v. Reserve Life Ins. Co.*, 881 F.2d 1355, 1359 (5th Cir.1989), *rehearing en banc denied*, 894 F.2d 1414 (5th Cir.1990), we described *Veal* as "perhaps the seminal case in Mississippi on the law of 'bad faith refusal' by an insurance company."

**4.** *See also Southern United Life Ins. Co. v. Caves*, 481 So.2d 764, 769 (Miss.1985).

**5.** *Cf. Atkinson v. Gates, McDonald & Co.*, 838 F.2d 808, 814 (5th Cir.1988).

**6.** *See, e.g., Atkinson v. Gates, McDonald & Co.*, 838 F.2d 808, 813 n. 6 (5th Cir.1988). No such distinct damage or wrong—apart from the alleged bad faith denial of the claim itself—appears here.

**7.** As here, additional proof—the forthcoming substantially increased premium and Polk's concern respecting it—will frequently be discovered later.

off work and being three weeks' late with a $300 payment on the car. The insurance company could infer that there was a financial incentive for Polk to burn the car and collect the insurance rather than risk the note's being called while he tried to sell it for a decent price. Even if this inference were quite weak, the insurance company nevertheless had an arguable reason to deny. The evidence of incendiary origin was rather strong, and the circumstances of the event were such that if the fire *were* incendiary Polk was in all likelihood the culprit. This conclusion would be strongly reinforced by the contradictory stories Polk told about the events in question, another factor relied on by Dixie in its denial and by the district court in its summary judgment ruling. Also, Polk had a few months previously bought another, less expensive, car on which payments were being made.

We note that in *Sutton v. Northern Ins. Co. of New York*, 681 F.Supp. 1221 (S.D. Miss.1988), a summary judgment for the insurance company on the punitive damages issue was granted on the basis that suspected arson formed an arguable basis for claim denial, notwithstanding that "the evidence of financial difficulty was not particularly compelling." *Id.* at 1223. *Sutton* further observes that "motive is not always an indispensable element in an arson defense," as, for example, "the arson defense could be established if it were shown that only the insured could have had access to the premises at the time of the fire." *Id.* at 1224 n. 4. Here, while Polk was not shown to be the only person who could have had access, the circumstances strongly suggest that if the fire was incendiary, it was set by Polk (or at his direction).[8] Moreover, as noted, he gave conflicting statements about the event. In *McGory,* the court held that the insurance company could get to the jury on its arson defense to the policy claim, even though the plaintiffs had "all but airtight alibis" and "[i]n one sense Allstate's [the insurer's] proof on the opportunity issue fails as a matter of law," because "Allstate's proof on incendiarism

and notice is quite substantial and has a force we find it difficult to ignore." *Id.,* 527 So.2d at 636–37. Here, where we are dealing with the arguable basis question (not the ultimate merits of the policy defense itself, as in *McGory*), the evidence of incendiarism and opportunity known to Dixie was "quite substantial" and, considered in light of the other evidence then known to Dixie, principally Polk's inconsistent statements, sufficed to overcome any weakness in the then known motive evidence and to constitute a reasonably arguable basis for denial as a matter of law.

For these reasons, we reject plaintiffs' complaint concerning the district court's summary judgment rejection of the punitive damages claim.

Having rejected each of plaintiffs' three claims of error, the district court's judgment is accordingly.

AFFIRMED.

**8.** He claimed to have jumped out of the car at about 3:30 or 4:00 a.m. on a county road when it started to go off the road and into a ditch. He was alone. He left the car in the ditch and was picked up by an unidentified passing car. The fire was first reported about 4:17 a.m. and again at about 5:20 a.m.