578 So.2d 1254 (1991)
Alvin THOMAS d/b/a Thomas Construction Company
v.
DIVERSIFIED CONTRACTORS, INC.
89-1366.
Supreme Court of Alabama.
April 19, 1991.
Richard A. Lawrence, Montgomery, for appellant.
Marvin H. Campbell, Montgomery, for appellee.
MADDOX, Justice.
This case returns to us after having been remanded to the trial court for a hearing pursuant to the jury selection standards set out in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). See Thomas v. Diversified Contractors, Inc., 551 So.2d 343 (Ala.1989).
On the prior appeal, this Court addressed only the issue of whether the jury selection standards of Batson v. Kentucky apply to civil cases, and the Court concluded that the Batson standards do apply to civil cases, following Fludd v. Dykes, 863 F.2d 822 (11th Cir.1989).[1] This Court remanded *1255 the case to the trial court for a hearing pursuant to those standards.
After remand, the trial court conducted a hearing and concluded, after quoting a portion of Ex parte Branch, 526 So.2d 609 (Ala.1987),[2] that even though Thomas did show that he was a member of a cognizable group and that plaintiff's counsel used his peremptory challenges to remove from the venire the members of defendant's race, he did not show any other relevant factors that would raise an inference of purposeful discrimination, noting that "[t]his case was a breach of contract," that it "dealt with business relations between two businesses," and that "[r]ace had nothing to do with it." The court found that "the defendant failed to meet his burden of showing the necessary inference of purposeful discrimination," which plaintiff's counsel sought to prove by calling various members of the jury venire to testify, but the trial court would not permit this procedure. The trial judge did note in his order on remand that the attorneys during the trial of the case had conducted voir dire examination of the prospective jurors, but that this voir dire examination was not recorded.
Thomas again appeals, and argues that the trial court erred in holding that he had not proven a prima facie case of discrimination at the Batson hearing. We agree.
The facts show that Thomas is black, and that Dennis Thompson, the owner of Diversified, the plaintiff, is white. In selecting the jury, each side was allowed 8 peremptory strikes. The jury venire consisted of 4 black members and 24 white members. All 4 black members of the venire were struck by the plaintiff.
Because the trial judge concluded that Thomas had failed to establish a prima facie case, we again set out the requirements of the law in this regard. The burden of persuasion is initially on the party alleging a discriminatory use of peremptory challenges to establish a prima facie case of discrimination. Only after a prima facie showing of discrimination has been established is a trial court under a duty to require an opposing party to provide racially neutral reasons for his peremptory strikes.
In Ex parte Branch, 526 So.2d 609 (Ala.1987), this Court set out the requirements for establishing a prima facie case of racial discrimination in the exercise of peremptory strikes. We hold that Thomas proved a prima facie case under the Branch requirements. Thomas is black, and he proved that Thompson used 4 of his peremptory challenges to remove all of the blacks from the jury venire. Branch requires the trial court to consider such factors as striking persons from a jury because of race, along with any other relevant circumstances that might raise an inference that a party used his peremptory strikes to exclude veniremen from the petit jury on account of their race.
Branch supplies an incomplete list of factors that might be used to raise an *1256 inference of discrimination. The first factor listed is the use of evidence that the "jurors in question share[d] only this one characteristictheir membership in the groupand that in all other respects they [were] as heterogenous as the community as a whole." Quoted from People v. Wheeler, 22 Cal.3d 258, 280, 583 P.2d 748, 764, 148 Cal.Rptr. 890, 905 (1978). The blacks that were struck from this venire were men and women ranging in age from 35 to 72. The only thing they had in common was the fact that they were black.
Another factor listed in Branch considers the pattern of strikes used against black jurors on any particular venire. In this case, Thompson used his second, third, and fourth strikes to exclude the black males, and his sixth to exclude the black female, thereby removing all of the blacks from the jury.
Another factor listed in Branch is the type and manner of the opposing counsel's questions and statements during voir dire, including a consideration of whether counsel conducts nothing more than desultory voir dire. In this case, Thompson's attorney asked the members of the jury venire 16 questions. All of these questions concerned whether the venire members knew anyone connected to the case or had ever been connected with a contract dispute. No questions of any other kind were asked by Thompson's attorney. Specifically, no questions were asked to determine whether the race of the defendant would affect in any way any particular prospective juror.
Another factor listed in Branch states that circumstantial evidence of discriminatory intent may be proven by a showing of a disparate impact on blacks where all or most of the challenges were used to strike blacks from the jury. Only half of Thompson's available strikes were used to strike blacks from the venire. However, he did use four of his first six strikes to eliminate all of the blacks from the venire.
Another factor listed in Branch covers the situation in which a party uses his peremptory challenges to dismiss all or most black jurors. Here, Thompson used his peremptory challenges to strike all of the blacks from the venire.
Thomas clearly met the requirements set forth in Branch in order to establish a prima facie case of discriminatory use of peremptory strikes. In addition, he showed the presence in this case of 5 of the 9 factors that Branch considered indicative of discrimination.
We have reviewed the record and find it apparent that the trial judge was clearly wrong in ruling that Thomas had failed to prove a prima facie case of discriminatory use of peremptory strikes, but our inquiry does not end there. The trial court was aware that the law required that once a prima facie showing of discrimination has been established, the opposing party must provide racially neutral reasons for his strikes.
During the hearing, the trial judge stated that although he found that Thomas had failed to establish a prima facie showing of discrimination, he would, out of an abundance of caution, require that Thompson provide reasons for his strikes of the four blacks, but the trial court would not allow Thomas to examine Thompson's attorney concerning his reasons for his strikes. In this, the trial court again erred. In Ex parte Lynn, 543 So.2d 709 (Ala.1988), cert. denied, ___ U.S. ___, 110 S.Ct. 351, 107 L.Ed.2d 338 (1989), this Court recognized the right of an attorney to examine an opposing attorney regarding his use of peremptory strikes, when, of course, the court has found a prima facie showing of discrimination. At that time, an attorney may examine the opposing party or that party's counsel regarding his use of peremptory strikes in order to determine if sufficient race-neutral reasons exist for the strikes.
By refusing to require the plaintiff's counsel to state his reasons for his peremptory challenges, the trial judge erred.
Based on the foregoing, the case must once again be remanded to the trial court for further proceedings consistent with this opinion. Upon remand, Thomas should be allowed to examine Thompson's attorney as to the reasons for his peremptory strikes, or the court should require Thompson's *1257 attorney to state his reasons for the record. After this is done, the trial court can then determine whether Thompson had sufficient race-neutral reasons for the exercise of the peremptory strikes of the black jurors.
REVERSED AND REMANDED.
ADAMS, STEAGALL, KENNEDY and INGRAM, JJ., concur.
HOUSTON, J., concurs in part and dissents in part.
ALMON and SHORES, JJ., dissent.
HOUSTON, Justice (concurring in part and dissenting in part).
I concur with the affirmance in part.
I dissent as to the reversal and remand. I would affirm. See my dissent in Thomas v. Diversified Contractors, Inc., 551 So.2d 343, 349-53 (Ala.1989).
NOTES
[1] In Polk v. Dixie Ins. Co., 897 F.2d 1346, 16 Fed.R.Serv.3d 209 (5th Cir.1990), petition for certiorari granted, ___ U.S. ___, 111 S.Ct. 2791, ___ L.Ed.2d ___ (1991), the Fifth Circuit Court of Appeals held that Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), does not apply to civil suits solely between private parties. The Polk case is still pending in the Supreme Court of the United States, but the Supreme Court of the United States has given further guidance of the scope of Batson in Powers v. Ohio, ___ U.S. ___, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).

The Supreme Court of the United States held in Powers that in criminal cases the Batson principles apply to white defendants, and stated as follows:
"Jury service is an exercise of responsible citizenship by all members of the community, including those who otherwise might not have the opportunity to contribute to our civic life. Congress recognized this over a century ago in the Civil Rights Act of 1875, which made it a criminal offense to exclude persons from jury service on account of their race. See 18 U.S.C. § 243. In a trilogy of cases decided soon after enactment of this prohibition, our Court confirmed the validity of the statute, as well as the broader constitutional imperative of race neutrality in jury selection. See Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664 (1880); Virginia v. Rives, 100 U.S. 313, 25 L.Ed. 667 (1880); Ex parte Virginia, 100 U.S. 339, 25 L.Ed. 676 (1880). In the many times we have confronted the issue since those cases, we have not questioned the premise that racial discrimination in the qualification or selection of jurors offends the dignity of person and the integrity of the court. Despite the clarity of these commands to eliminate the taint of racial discrimination in the administration of justice, allegations of bias in the jury selection process persist. In this case, petitioner alleges race discrimination in the prosecution's use of peremptory challenges. Invoking the Equal Protection Clause and federal statutory law, and relying upon well-established principles of standing, we hold that a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same race."
[2] The trial court quoted the following sentences from Branch: "The burden of persuasion is initially on the party alleging discriminatory use of peremptory challenges to establish a prima facie case of discrimination. In determining whether there is a prima facie case, the court is to consider `all relevant circumstances' which could lead to an inference of discrimination." 526 So.2d at 622.