659 So.2d 3 (1994)
Ex parte Addie Lee THOMAS.
(Re Addie Lee Thomas v. State).
1921804.
Supreme Court of Alabama.
September 2, 1994.
Richard M. Kemmer, Jr. of Brown & Kemmer, Phenix City, for petitioner.
James H. Evans, Atty. Gen., and Stephen N. Dodd, Asst. Atty. Gen., for respondent.

On Application for Rehearing
ALMON, Justice.
The opinion released on May 20, 1994, is withdrawn and the following is substituted as the opinion of the Court.
Addie Lee Thomas was convicted of the murder of her husband and was sentenced to 20 years' imprisonment. The Court of Criminal Appeals affirmed, by an unpublished memorandum (see Thomas v. State, 636 So.2d 492 (Ala.Crim.App.1993)); we granted her petition for a writ of certiorari to determine whether a statement in that court's memorandum conflicts with Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and cases following Batson. The question is whether we should reaffirm the principle that "[w]hen the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created." Harrell v. State, 571 So.2d 1270, 1271 (Ala.1990), cert. denied, 499 *4 U.S. 984, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1990). Or, as Thomas phrases the issue, may a defendant make a prima facie case of discrimination by showing that the prosecutor used a large number of his peremptory challenges to engage in a pattern of striking blacks from the venire, even though a higher percentage of blacks ultimately sat on the jury than on the venire?
The only facts in the record that are relevant to this case appear in the following discussion between the defense attorney, the prosecutor, and the judge:
"MR. KELLY: On behalf of the defendant, Addie Thomas, we would, pursuant to Batson, ... ask the State of Alabama to come forward with neutral reasons for their strikes. In the jury venire, 32, each side was granted 9 strikes with [the] 10[th] strike being alternate. Of the 10 strikes which the State has, they utilized 9 of them to strike members of African-American descent, which is a recognized minority. We would ask the State to come forward with race-neutral reasons for these [strikes]. As the jury is constituted, I believe there are six members of ... African-American descent seated on the jury.
"MR. ESTES: Your Honor, in response the State would contend that the State is not obliged to come forward with race-neutral reasons for its strikes, since the composition of the jury venire is 15 minority and 17 white jurors. The composition of the jury as selected is 50 percent black, and because the composition of the jury is slightly more than the composition of the jury venire in terms of the percentage, the State is not obliged to show race-neutral reasons for any of its strikes. The composition of the jury does not show a prima facie Batson [violation].
"THE COURT: I agree. I would overrule."
The memorandum of the Court of Criminal Appeals states, in pertinent part:
"Affirmed by Memorandum. The judgment of the circuit court is affirmed. The appellant, Addie Lee Thomas, appeals her conviction and her subsequent sentence of twenty years' imprisonment for the murder of her common law husband. Thomas raised two issues on appeal. Thomas first contends that the trial court committed reversible error by not allowing a Batson hearing following the state's use of nine of its ten peremptory strikes against black members of the venire. The original venire pool consisted of 47% black members and the final empaneled jury was 50% black. The trial court did not make a clearly erroneous ruling by finding that a prima facie case of discrimination was not established against the state. See Harrell v. State, 571 So.2d 1270 (Ala.1990) (holding that a prima facie case of discrimination is not established merely by the number of peremptory strikes against blacks in cases where the percentage of blacks on the empaneled jury is higher than the percentage of the venire pool)."
In Harrell v. State, 555 So.2d 263 (Ala. 1989) ("Harrell I"), the Court held that after the prosecutor uses peremptory challenges to remove black veniremembers, the court should hold a Batson inquiry to afford the defendant the opportunity to present a prima facie case of racial discrimination. 555 So.2d at 267-68.
The circuit court in this case did not deprive the defendant Thomas of an opportunity to put on a prima facie case, but simply held that Thomas had failed to make a prima facie showing of discriminatory strikes and, thus, the court refused to order the prosecutor to give reasons for his strikes.
In Harrell I, this Court granted the State's petition for certiorari review, but affirmed the judgment of the Court of Criminal Appeals, remanding the case for the circuit court to hold a Batson hearing. The Court recognized in Harrell I the problems circuit judges were facing in struggling with whether a "pattern of strikes" existed in a particular case:
"`[T]he court may be forced to play an often confusing numbers game to decide whether a "pattern" of discriminatory strikes exists. Decisions based upon numbers alone necessarily assume a somewhat arbitrary character and are a major reason for the often contradictory outcomes in lower court decisions.'"
*5 555 So.2d at 266 (quoting Note, Batson v. Kentucky and the Prosecutorial Peremptory Challenge: Arbitrary and Capricious Equal Protection, 74 Va.L.Rev. 811, 821 (1988)). However, Harrell I cited Ex parte Branch, 526 So.2d 609 (Ala.1987), as "set[ting] out certain specific kinds of conduct by a prosecutor that would raise the inference of discrimination under Batson," including "`A pattern of strikes against black jurors on the particular venire....'"[1]Harrell I, 555 So.2d at 266, quoting Branch, 526 So.2d at 622.
On remand, the circuit court held a hearing and determined that Harrell had made a prima facie case of purposeful discrimination on the part of the prosecutor in selecting the jury. The venire had contained 10 black members; the prosecution struck 5 of them. The circuit court determined that the prosecutor had failed to present race-neutral reasons for striking those five black veniremembers. The Court of Criminal Appeals, on return to remand, reversed Harrell's conviction and remanded the case for a new trial. The State again petitioned for a writ of certiorari, and this Court granted the petition. The Court stated the following in Harrell v. State, 571 So.2d 1270, 1271-72 (Ala. 1990), cert. denied, 499 U.S. 984, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1990) ("Harrell II"):
"[T]he State ... argues that the following undisputed facts established, as a matter of law, that the prosecutor did not engage in purposeful discrimination when she struck the [five] blacks from the jury venire: 1) The lawfully established venire consisted of 28 people, of whom 10 (35.7%) were black; 2) the prosecutor used 5 of her 8 peremptory challenges to strike blacks and the remaining 3 to strike whites; 3) defense counsel used all 8 of his peremptory challenges to strike whites from the venire; and 4) the jury that was ultimately empanelled consisted of 5 blacks, amounting to 41.7% of the jury (a greater percentage than was on the lawfully established venire), and 7 whites.
"If these were the only facts Harrell relied on to raise an inference of discrimination, we would agree with the State and reverse the judgment of the Court of Criminal Appeals. As we explained in Harrell [I], a defendant cannot prove a prima facie case of purposeful discrimination solely from the fact that the prosecutor struck one or more blacks from his jury [emphasis in original]. A defendant must offer some evidence in addition to the striking of blacks that would raise an inference of discrimination. When the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created [emphasis added]. Logically, if statistical evidence may be used to establish a prima facie case of discrimination, by showing a discriminatory impact, Harrell [I], 555 So.2d [at] 267, citing United States v. David, 803 F.2d 1567, 1571 (11th Cir.1986), then it should also be available to show the absence of a discriminatory purpose."
In Harrell II, the Court pointed out that the defendant presented evidence "that the five blacks who were struck from the venire shared only one characteristictheir membership in the black raceand that in all other respects they were as heterogeneous a group as the community as a whole." 571 So.2d at 1272. The Court also pointed out that "the prosecutor engaged in a rather limited voir dire," and that "[t]he record fail[ed] to show that any of the five blacks responded to the prosecutor's [voir dire] questions in such a way as to give any insight into why they were stricken." Id. Finally, the Court in Harrell II noted that the United States Court of Appeals for the Eleventh Circuit had already held, under the Swain v. Alabama[2] test, that the Mobile County district attorney's office, which had brought the *6 charges against Harrell, had a history of discriminatorily striking blacks. Id.
Thus, the emphasized statement near the end of the two paragraphs quoted above from Harrell II was obiter dictum. The Court stated that "[w]hen the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created." 571 So.2d at 1271. In Harrell's case, that was not the only thing shown, as the Court proceeded to illustrate.
Although the principle stated in Harrell II appears logical from one perspective, i.e., if statistics can be used to show the presence of a discriminatory impact, then they can also be used to show the absence of such an impact, this principle has had the inappropriate effect of preventing a finding of a prima facie showing of discrimination, even where, as here, the prosecutor used a significant number of his strikes to remove blacks from the venire. See, e.g., Scott v. State, 599 So.2d 1222 (Ala.Crim.App.1992), cert. denied, 599 So.2d 1229 (Ala.1992), overruled on other grounds, Smith v. State, 612 So.2d 1314, 1316 (Ala.Crim.App.1992); Hood v. State, 598 So.2d 1022, 1023 (Ala.Crim.App.1991); cf. Demunn v. State, 627 So.2d 1005, 1006 (Ala. Crim.App.1991), aff'd, 627 So.2d 1010 (Ala. 1992); Huntley v. State, 627 So.2d 1011, 1011-12 (Ala.Crim.App.1991), aff'd, 627 So.2d 1013 (Ala.1993).
In Batson, the United States Supreme Court held:
"Although a prosecutor ordinarily is entitled to exercise permitted peremptory challenges `for any reason at all, as long as that reason is related to his view concerning the outcome' of the case to be tried,... the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant."
Batson, 476 U.S. at 89, 106 S.Ct. at 1719 (citations omitted).
The Court went on to outline the components of a defendant's prima facie case:
"To establish such a case, the defendant first must show that he is a member of a cognizable racial group, ... and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race.[[3]] Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits `those to discriminate who are of a mind to discriminate.'... Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.
"In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a `pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose."
Batson, 476 U.S. at 96-97, 106 S.Ct. at 1723 (emphasis added). In Ex parte Branch, we stated:
"The following are illustrative of the types of evidence that can be used to raise the inference of discrimination:
"1. Evidence that the `jurors in question share[d] only this one characteristictheir membership in the group and that in all other respects they [were] as heterogeneous as the community as a whole.'....
"2. A pattern of strikes against black jurors on the particular venire; e.g. 4 of *7 6 peremptory challenges were used to strike black jurors."
Branch, 526 So.2d at 622-23 (emphasis added; citations omitted).
The problem with the emphasized statement in Harrell II is that it has led to a conflict with a factor that was approved by the Supreme Court in Batson and by this Court in Branch as tending to establish a prima facie case, i.e., proof that the prosecutor engaged in a "pattern of discriminatory strikes." In many instances, the black members of a venire drawn for a particular case or trial week will constitute 30%, 40%, 50%, or a higher percentage of the veniremembers. Because of the statement in Harrell II, a prosecutor wishing to strike blacks on a racially discriminatory basis may do so as long as he or she strikes less than a certain number so that a higher percentage of blacks sits on the jury than sat on the venire and as long as he or she engages in no overt discrimination to otherwise establish a prima facie case. Thus, by the language in Harrell II, the Court has created a playing field for a more sophisticated numbers game than the Court was trying to eliminate in Harrell I. A skilled but racially biased attorney could learn to manipulate the strike process so as to be able to strike a certain number of blacks from the venire on the basis of race, and yet not be called to account for the racially based strikes, as long as some blacks were left on the jury. Such a result should not be approved.
"`[A] prima facie case may be made where relevant circumstances indicate an inference of purposeful race discrimination no matter that one or more black persons may remain on the jury.' United States v. Wilson, 884 F.2d 1121, 1123 (8th Cir.1989). `The striking of one venireperson for a racial reason violate[s] the Equal Protection Clause, even when valid reasons for striking some black jurors are shown.' Williams v. State, 548 So.2d 501, 507 (Ala. Crim.App.1988), cert. denied, 489 U.S. 1028 [109 S.Ct. 1159, 103 L.Ed.2d 218] ... (1989). `Of course, the fact that blacks are ultimately seated on the jury does not necessarily bar a finding of discrimination under Batson[,] see [United States v.] Battle, 836 F.2d [1084] [at] 1086 [(8th Cir. 1987)], but the fact may be taken into account in a review of all the circumstances as one that suggests that the government did not seek to rid the jury of persons who shared the defendant's race.' United States v. Young-Bey, 893 F.2d 178, 180 (8th Cir.1990)."
Mitchell v. State, 579 So.2d 45, 48 (Ala.Crim. App.1991), cert. denied, 596 So.2d 954 (Ala. 1992).
"[T]he Equal Protection Clause prohibits a prosecutor from using the State's peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race, a practice that forecloses a significant opportunity to participate in civic life. An individual juror does not have a right to sit on any particular petit jury, but he or she does possess the right not to be excluded from one on account of race."
Powers v. Ohio, 499 U.S. 400 at 409, 111 S.Ct. 1364 at 1370 (emphasis added).
The language in Harrell II has unfortunately resulted in a possibility that prosecutors may violate the Equal Protection Clause and exclude blacks from jury service solely on the color of their skin. We disapprove the statement in Harrell II indicating that "[w]hen the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created," 571 So.2d at 1271, to the extent that it has been construed to preclude a finding of a prima facie Batson violation where the attorney engaged in a pattern of striking blacks from the venire. We disapprove this statement in Harrell II as it has been applied in these instances, because such applications prevent a defendant from using a factor indicating discrimination that was approved in both Branch and Batson. Such an application was not the Court's intent. In Ex parte Bird, 594 So.2d 676 (Ala.1991), decided more than a year after Harrell II, this Court did not construe the dictum of Harrell II to mean that a defendant cannot make a prima facie case if the percentage of blacks on the jury is greater than the percentage that was on the venire. *8 Instead, the Bird Court stated only that such a statistical showing weakens a prima facie case. See 594 So.2d at 680-81.
Long v. State, 615 So.2d 114, 115-16 (Ala. Crim.App.1992), cert. denied, ___ U.S. ___, 114 S.Ct. 179, 126 L.Ed.2d 138 (1993); Johnson v. State, 601 So.2d 1147, 1148 (Ala.Crim. App.1992); Christianson v. State, 601 So.2d 512, 516, 517 (Ala.Crim.App.1992); Scott v. State, 599 So.2d 1222 (Ala.Crim.App.1992), cert. denied, 599 So.2d 1229 (Ala.1992), overruled on other grounds, Smith v. State, 612 So.2d 1314, 1316 (Ala.Crim.App.1992); and Hood v. State, 598 So.2d 1022, 1023 (Ala. Crim.App.1991), relied solely on the statement in Harrell II in holding that no prima facie case of discrimination existed, despite the fact that the prosecutor used a large number of his peremptory challenges to strike blacks from the venire. They are therefore inconsistent with this opinion, and they are to that extent overruled. Cf. Guthrie v. State, 598 So.2d 1013, 1019-20 (Ala. Crim.App.1991), cert. denied, 598 So.2d 1020 (Ala.1992); and Strickland v. State, 593 So.2d 138, 139-40 (Ala.Crim.App.1991) (both distinguishing the application of Harrell II).
The prosecutor here used 9 of his 10 strikes to strike blacks from the venire. By objecting to this pattern of striking blacks from the venire, Thomas made a prima facie showing of a Batson violation. See Batson, 476 U.S. at 96-97, 106 S.Ct. at 1723; Williams, 571 So.2d at 990; see also Branch, 526 So.2d at 622-23. The district attorney's response to Thomas's objection indicated that he was relying on the statement in Harrell II and was interpreting it to mean he did not have to give race-neutral reasons as long as blacks formed a higher percentage of the jury than of the venire. The circuit court simply agreed with this argument. A circuit court's ruling on a Batson objection is entitled to great deference, and we will reverse a circuit court's Batson findings only if they are clearly erroneous. Branch, 526 So.2d at 625-26. However, because it appears that the circuit court erroneously relied on the dictum in Harrell II and construed it to mean that Thomas had not established a prima facie case, we reverse the judgment of the Court of Criminal Appeals and remand this case for that court to order a hearing on whether the prosecutor used his peremptory strikes in a discriminatory fashion to remove blacks from the venire.
We emphasize that our disapproval of the construction that has been given Harrell II does not mean that an increased percentage of blacks on the jury can never be a circumstance to be considered in ruling whether a discriminatory use of peremptory strikes has been shown. In a proper case, the fact that the percentage of blacks on the jury is higher than the percentage of blacks on the venire may be a factor to be considered in deciding whether a prima facie case of discrimination has been made or rebutted. However, where, as here, the prosecutor has used such a large portion of his strikes against blacks as to indicate a pattern of striking blacks from the venire, the fact that the jury has a higher percentage of blacks than the venire had does not mean that no prima facie case of discrimination has been made.
OPINION WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED; AND APPLICATION OVERRULED.
HORNSBY, C.J., and SHORES, KENNEDY, INGRAM and COOK, JJ., concur.
HOUSTON, J., concurs in the result.
MADDOX, J., who did not participate in the original decision, dissents from the denial of the State's application for rehearing.
HOUSTON, Justice (concurring in the result).
As the author of what was a perfectly good opinion (in Harrell v. State, 571 So.2d 1270 (Ala.1990), cert. denied, 499 U.S. 984, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1990)), I was first inclined to dissent. However, after studying J.E.B. v. Alabama ex rel. T.B., ___ U.S. ___, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), which forbids peremptory challenges on the basis of gender ("sex" according to the caustic dissent of Justice Scalia) as well as on the basis of race, I believe that the requirement of a prima facie showing of discrimination *9 has been abolished. In spite of the weak attempt by the majority in J.E.B. to assure that J.E.B. does not eliminate all peremptory challenges, I read J.E.B. as requiring a nongender, nonrace reason for striking any juror that is struck, and as requiring no prima facie showing of gender (sex) or racial discrimination before a disclosure of reason is required. Therefore, there is no more peremptory challenge.
I believe that the peremptory challenge has served the litigants in this state (black, white, male, female, rich, poor, plaintiff, civil defendant, state, criminal defendant) well. I add this concurrence in the result to my too-frequent dissents in bemoaning the demise of an effective means of assuring that the litigants in the courts of Alabama are satisfied with the jurors to whom they entrust their lives, liberties, sacred honor, and property. Ex parte Jackson, 640 So.2d 1050 (Ala.1993); Huntley v. State, 627 So.2d 1013 (Ala.1992); Ex parte Thomas, 601 So.2d 56 (Ala.1992); Guthrie v. State, 598 So.2d 1020 (Ala.1992); Thomas v. Diversified Contractors, Inc., 578 So.2d 1254 (Ala.1991); and Van Scoy v. State, 555 So.2d 195 (Ala.1989).
MADDOX, Justice (dissenting from denial of application).
This case presents an issue very important to trial judges, prosecutors, defense counsel, and civil litigants also: What must a party show to establish a prima facie case of a Batson[4] violation?
I did not participate in the decision on original deliverance, but I agree with the State, in its application for rehearing, that this Court has failed to follow the principles of law stated by the Supreme Court of the United States in Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), wherein the Court gave some specific directions for appellate courts to follow in reviewing factual determinations made by trial courts in regard to Batson challenges. Consequently, I must respectfully disagree with the Court's decision not to grant a rehearing in this case.
The majority of this Court, in reversing the judgment of the Court of Criminal Appeals, concluded, as a matter of law, that the defendant had established a prima facie case of purposeful racial discrimination. This conclusion by the majority, as I view it, was based solely on the defendant's showing that the prosecutor had used 9 of his 10 peremptory strikes to exclude blacks from the jury, without giving any consideration to the fact that the defendant used all of his peremptory strikes to remove white jurors and did not strike a single black juror. The effect of the action by both parties was that the jury selected to try the case consisted of 6 blacks, including one not stricken by the prosecution who could have been stricken, and 6 whites.
The trial judge determined that the defendant had not made a prima facie showing of purposeful racial discrimination; therefore, he did not require the prosecutor to state race-neutral reasons for his strikes. I would not reverse, because I do not believe that the defendant made a sufficient showing of purposeful discrimination.
I am convinced that the majority, in concluding that a prima facie showing was made, has not applied what I consider to be the proper principles of law that govern appellate review of a trial judge's determination.
To invoke Batson, a defendant must initially establish a prima facie case of purposeful discrimination, by showing that the prosecutor has peremptorily challenged members of his race under circumstances that raise an inference of discrimination. Cf. United States v. Lewis, 837 F.2d 415 (9th Cir.1988). To defeat such a showing, the prosecutor must "articulate a [race-]neutral explanation [for the challenge] related to the particular case to be tried." Batson, 476 U.S. at 98, 106 S.Ct. at 1724. If the court finds that the explanation is not race-neutral, then the Batson remedy is mandated. Id. at 99 n. 24, 106 S.Ct. at 1724 n. 24. Appellate courts give great deference to the trial court's findings and will not disturb them unless they are clearly erroneous. See Hernandez v. New York, 500 U.S. 352, 364, 111 S.Ct. 1859, 1869, 114 L.Ed.2d 395 (1991), in which the Supreme *10 Court of the United States held, in reviewing a Batson claim arising out of a state prosecution, that an appellate court should decline to overturn a trial court's finding on the issue of discriminatory intent unless the appellate court is convinced that the trial court's determination was clearly erroneous. The Supreme Court also held in Hernandez that an appellate court should not conduct an "independent" appellate review. By using only the statistics shown in the record, the majority, it seems to me, has done what the law says should not be done; it has conducted an "independent" review of the facts surrounding the Batson challenge, and in doing so, not only has supplanted its determination of a prima facie showing for the determination of the trial court, but also has explicitly overruled several Alabama cases.
I believe that the majority fails to apply the initial mandate of Batson, as further explained in some detail in Hernandez, and has unnecessarily made the application of Batson by trial judges even more foreboding than it was.
In Hernandez, the Supreme Court stated the principles that should guide an appellate court in determining whether there has been a showing of purposeful discrimination:
"In evaluating the race-neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law. A court addressing this issue must keep in mind the fundamental principle that `official action will not be held unconstitutional solely because it results in a racially disproportionate impact.... Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.' Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 264-265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977); see also Washington v. Davis, 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976). `"Discriminatory purpose"... implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected ... a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group.' Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979) (footnote and citation omitted); see also McCleskey v. Kemp, 481 U.S. 279, 297-299, 107 S.Ct. 1756, 1769-1770, 95 L.Ed.2d 262 (1987)."
Hernandez, 500 U.S. at 359-360, 111 S.Ct. at 1866.
In commenting on the standards of appellate review, the Court said:
"Batson's treatment of intent to discriminate as a pure issue of fact, subject to review under a deferential standard, accords with our treatment of that issue in other equal protection cases. See Hunter v. Underwood, 471 U.S. 222, 229, 105 S.Ct. 1916, 1921, 85 L.Ed.2d 222 (1985) (Court of Appeals correctly found that District Court committed clear error in concluding state constitutional provision was not adopted out of racial animus); Rogers v. Lodge, 458 U.S. 613, 622-623, 102 S.Ct. 3272, 3278-3279, 73 L.Ed.2d 1012 (1982) (clearly erroneous standard applies to review of finding that at-large voting system was maintained for discriminatory purposes); Dayton Board of Education v. Brinkman, 443 U.S. 526, 534, 99 S.Ct. 2971, 2977, 61 L.Ed.2d 720 (1979) (affirming Court of Appeals' conclusion that District Court's failure to find the intentional operation of a dual school system was clearly erroneous); Akins v. Texas, 325 U.S. 398, 401-402, 65 S.Ct. 1276, 1278, 89 L.Ed. 1692 (1945) (great respect accorded to findings of state court in discriminatory jury selection case); see also Miller v. Fenton, 474 U.S. 104, 113, 106 S.Ct. 445, 451, 88 L.Ed.2d 405 (1985). As Batson's citation to Anderson [v. Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985),] suggests, it also corresponds with our treatment of the intent inquiry under Title VII. See Pullman-Standard v. Swint, 456 U.S. 273, 293, 102 S.Ct. 1781, 1792, 72 L.Ed.2d 66 (1982).
"Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because, as we *11 noted in Batson, the finding will `largely turn on evaluation of credibility.' 476 U.S., at 98, n. 21, 106 S.Ct., at 1724, n. 21. In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies `peculiarly within a trial judge's province.' Wainwright v. Witt, 469 U.S. 412, 428, 105 S.Ct. 844, 854, 83 L.Ed.2d 841 (1985), citing Patton v. Yount, 467 U.S. 1025, 1038, 104 S.Ct. 2885, 2892, 81 L.Ed.2d 847 (1984).
"The precise formula used for review of fact findings, of course, depends on the context. Anderson was a federal civil case, and we there explained that a federal appellate court reviews the finding of a district court on the question of intent to discriminate under Federal Rule of Civil Procedure 52(a), which permits factual findings to be set aside only if clearly erroneous. While no comparable rule exists for federal criminal cases, we have held that the same standard should apply to review of findings in criminal cases on issues other than guilt. Maine v. Taylor, 477 U.S. 131, 145, 106 S.Ct. 2440, 2450, 91 L.Ed.2d 110 (1986); Campbell v. United States, 373 U.S. 487, 493, 83 S.Ct. 1356, 1360, 10 L.Ed.2d 501 (1963); 2 C. Wright, Federal Practice and Procedure § 374 (2d ed. 1982 and Supp.1990). On federal habeas review of a state conviction, 28 U.S.C. § 2254(d) requires the federal courts to accord state court factual findings a presumption of correctness."
Hernandez, 500 U.S. at 365-366, 111 S.Ct. at 1869.
"A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."
Hernandez, 500 U.S. at 360, 111 S.Ct. at 1866.
In Hernandez, Justice O'Connor, who was joined by Justice Scalia, concurred specially. She wrote:
"An unwavering line of cases from this Court holds that a violation of the Equal Protection Clause requires state action motivated by discriminatory intent; the disproportionate effects of state action are not sufficient to establish such a violation. In Washington v. Davis, 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976), we explained that `our cases have not embraced the proposition that a law or other official act, without regard to whether it reflects a racially discriminatory purpose, is unconstitutional solely because it has a racially disproportionate impact.' `[A] defendant who alleges an equal protection violation has the burden of proving "the existence of purposeful discrimination."' McCleskey v. Kemp, 481 U.S. 279, 292, 107 S.Ct. 1756, 1767, 95 L.Ed.2d 262 (1987). See also Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 264-265, 97 S.Ct. 555, 562-563, 50 L.Ed.2d 450 (1977); Keyes v. School Dist. No. 1, Denver, Colo., 413 U.S. 189, 198, 93 S.Ct. 2686, 2689, 37 L.Ed.2d 548 (1973); Wright v. Rockefeller, 376 U.S. 52, 56-57, 84 S.Ct. 603, 605-606, 11 L.Ed.2d 512 (1964).
"We have recognized the discriminatory intent requirement explicitly in the context of jury selection. Thus, `[a] purpose to discriminate must be present which may be proven by systematic exclusion of eligible jurymen of the proscribed race or by unequal application of the law to such an extent as to show intentional discrimination.' Akins v. Texas, 325 U.S. 398, 403-404, 65 S.Ct. 1276, 1279, 89 L.Ed. 1692 (1945). See also Alexander v. Louisiana, 405 U.S. 625, 628-629, 92 S.Ct. 1221, 1224-1225, 31 L.Ed.2d 536 (1972); Whitus v. Georgia, 385 U.S. 545, 549-550, 87 S.Ct. 643, 646-647, 17 L.Ed.2d 599 (1967); Norris v. Alabama, 294 U.S. 587, 589, 55 S.Ct. 579, 580, 79 L.Ed. 1074 (1935); Neal v. *12 Delaware, 103 U.S. 370, 394, 26 L.Ed. 567 (1881). The point was made clearly in Batson itself: `As in any equal protection case, the "burden is, of course," on the defendant who alleges discriminatory selection... "to prove the existence of purposeful discrimination."' 476 U.S., at 93, 106 S.Ct., at 1721, quoting Whitus, supra, 385 U.S., at 550, 87 S.Ct., at 646.
"Consistent with our established equal protection jurisprudence, a peremptory strike will constitute a Batson violation only if the prosecutor struck a juror because of the juror's race. `[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that [Hispanic] jurors as a group will be unable impartially to consider the State's case.' Batson, 476 U.S., at 89, 106 S.Ct., at 1719 (emphasis added). See also Powers v. Ohio, 499 U.S. [400, 409], 111 S.Ct. 1364, 1370, 113 L.Ed.2d 411 (1991) (`the Equal Protection Clause prohibits a prosecutor from using the State's peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race'). Batson's requirement of a race-neutral explanation means an explanation other than race.
"In Washington v. Davis, supra, we outlined the dangers of a rule that would allow an equal protection violation on a finding of mere disproportionate effect. Such a rule would give rise to an unending stream of constitutional challenges:
"`A rule that [state action] designed to serve neutral ends is nevertheless invalid, absent compelling justification, if in practice it benefits or burdens one race more than another would be far reaching and would raise serious questions about, and perhaps invalidate, a whole range of tax, welfare, public service, regulatory, and licensing statutes that may be more burdensome to the poor and to the average black than to the more affluent white.' Id., 426 U.S., at 248, 96 S.Ct., at 2051.
"In the same way, a rule that disproportionate effect might be sufficient for an equal protection violation in the use of peremptory strikes runs the serious risk of turning voir dire into a full-blown disparate impact trial, with statistical evidence and expert testimony on the discriminatory effect of any particular nonracial classification. In addition to creating unacceptable delays in the trial process, such a practice would be antithetical to the nature and purpose of the peremptory challenge. Absent intentional discrimination violative of the Equal Protection Clause, parties should be free to exercise their peremptory strikes for any reason, or no reason at all. The peremptory challenge is `as Blackstone says, an arbitrary and capricious right; and it must be exercised with full freedom, or it fails of its full purpose.' Lewis v. United States, 146 U.S. 370, 378, 13 S.Ct. 136, 139, 36 L.Ed. 1011 (1892) (internal quotations omitted)."
Hernandez, 500 U.S. at 372-374, 111 S.Ct. at 1873-74.
The prosecutor did not use all of his peremptory strikes to remove black jurors. It has been held that the willingness of a prosecutor to accept minority jurors weighs against the finding of a prima facie case. See United States v. Montgomery, 819 F.2d 847, 851 (8th Cir.1987) (no prima facie case where the Government (1) accepted a jury that included two blacks; (2) could have used its remaining peremptory challenges to strike these remaining blacks; and (3) did not attempt to exclude all blacks (or as many blacks as it could); accord United States v. Ratcliff, 806 F.2d 1253, 1256 (5th Cir.1986) (although one black was struck, two blacks remained on jury), cert. denied, 481 U.S. 1004, 107 S.Ct. 1625, 95 L.Ed.2d 199 (1987); United States v. Dennis, 804 F.2d 1208, 1210-11 (11th Cir.1986) (three blacks were excluded, but two blacks remained on jury), cert. denied, 481 U.S. 1037, 107 S.Ct. 1973, 95 L.Ed.2d 814 (1987).
In Batson, the Supreme Court did not specify the showing necessary to establish a prima facie case of discrimination. The Court stated: "We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of *13 discrimination against black jurors." 476 U.S. at 97, 106 S.Ct. at 1723. In making this determination, trial judges must be guided by the principles enunciated in Batson. The core teaching of Batson is that a "defendant [has] the right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria." Batson v. Kentucky, 476 U.S. at 85-86, 106 S.Ct. at 1716-1717. "Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection...." 476 U.S. at 86, 106 S.Ct. at 1717.
In Georgia v. McCollum, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), the Supreme Court recounted the history of the use of peremptory challenges and held "that the Constitution prohibits a criminal defendant from engaging in purposeful discrimination on the ground of race in the exercise of peremptory challenges" and that "if the State demonstrates a prima facie case of racial discrimination by the defendants, the defendants, must articulate a racially neutral explanation for peremptory challenges." 505 U.S. at 59, 112 S.Ct. at 2359.
In McCollum, the Court discussed the principles of law that undergirded the Batson decision:
"The majority in Powers recognized that `Batson "was designed `to serve multiple ends,'" only one of which was to protect individual defendants from discrimination in the selection of jurors.' 499 U.S., at [406], 111 S.Ct., at 1368. As in Powers and Edmonson [v. Leesville Concrete Co., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660] [(1991)], the extension of Batson in this context is designed to remedy the harm done to the `dignity of persons' and to the `integrity of the courts.' Powers, at [402], 111 S.Ct., at 1366.
"As long ago as Strauder [v. State of West Virginia, 100 U.S. 303, 25 L.Ed. 664] [(1880)], this Court recognized that denying a person participation in jury service on account of his race unconstitutionally discriminates against the excluded juror. 100 U.S., at 308. See also Batson, 476 U.S., at 87, 106 S.Ct., at 1718. While `[a]n individual juror does not have a right to sit on any particular petit jury, ... he or she does possess the right not to be excluded from one on account of race.' Powers, 499 U.S., at [409], 111 S.Ct., at 1370. Regardless of who invokes the discriminatory challenge, there can be no doubt that the harm is the samein all cases, the juror is subjected to open and public racial discrimination.
"But `the harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community.' Batson, 476 U.S., at 87, 106 S.Ct., at 1718. One of the goals of our jury system is `to impress upon the criminal defendant and the community as a whole that a verdict of conviction or acquittal is given in accordance with the law by persons who are fair.' Powers, 499 U.S., at [413], 111 S.Ct., at 1372. Selection procedures that purposefully exclude African-Americans from juries undermine that public confidenceas well they should. `The overt wrong, often apparent to the entire jury panel, casts doubt over the obligation of the parties, the jury, and indeed the court to adhere to the law throughout the trial of the cause.' Id., at [411-412], 111 S.Ct., at 1371. See generally Underwood, Ending Race Discrimination in Jury Selection: Whose Right Is It, Anyway?, 92 Colum.L.Rev. 725, 748-750 (1992).
"The need for public confidence is especially high in cases involving race-related crimes. In such cases, emotions in the affected community will inevitably be heated and volatile. Public confidence in the integrity of the criminal justice system is essential for preserving community peace in trials involving race-related crimes. See Alschuler, The Supreme Court and the Jury: Voir Dire, Peremptory Challenges, and the Review of Jury Verdicts, 56 U.Chi. L.Rev. 153, 195-196 (1989) (describing two trials in Miami, Fla., in which all African-American jurors were peremptorily struck by white defendants accused of racial beating, and the public outrage and riots that followed the defendants' acquittal).
"Be it at the hands of the State or the defense, if a court allows jurors to be excluded because of group bias, it is a *14 willing participant in a scheme that could only undermine the very foundation of our system of justiceour citizens' confidence in it. Just as public confidence in criminal justice is undermined by a conviction in a trial where racial discrimination has occurred in jury selection, so is public confidence undermined where a defendant, assisted by racially discriminatory peremptory strikes, obtains an acquittal."
McCollum, 505 U.S. at 49-50, 112 S.Ct. at 2353-54.
Even though the State here did not make a cross-Batson challenge, it is apparent from the record that the defendant in this case, while making a Batson challenge, had at the same time used all of his peremptory challenges to remove white jurors. It would appear that the trial judge, in ruling on the defendant's challenge and considering whether the defendant had established a prima facie case, could apply this statement in McCollum: "Be it at the hands of the State or the defense, if a court allows jurors to be excluded because of group bias, it is a willing participant in a scheme that could only undermine the very foundation of our system of justiceour citizens' confidence in it." 505 U.S. at 49-50, 112 S.Ct. at 2354.
I would apply the principle of Hernandez here and would grant great deference to the trial judge, who is on the scene and who can best judge the credibility of the participants and determine what actually occurred. Neither the State nor the defendant should use racial stereotypes in exercising peremptory challenges.
As I stated earlier, I do not believe that the defendant carried her burden of showing purposeful discrimination considering all the circumstances shown by this record. I would not overturn the finding by the trial judge in this case. I dissent.
NOTES
[1] We have held, since the release of Harrell I, that a defendant can establish a prima facie case solely on the fact that a prosecutor used a large number of his peremptory challenges to strike black veniremembers. See Ex parte Williams, 571 So.2d 987, 990 (Ala.1990) (holding that the prosecutor's use of four of his five peremptory strikes to remove blacks was sufficient to establish a prima facie case).
[2] 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).
[3] Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), held that a white defendant has third-party standing to raise an equal protection argument under Batson, thus eliminating the requirement that the defendant and those struck be of the same minority.
[4] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).